522 So.2d 18 (1988)
STATE of Florida, Petitioner,
v.
Charles SLAPPY, Respondent.
No. 70331.
Supreme Court of Florida.
March 10, 1988.
*19 Robert A. Butterworth, Atty. Gen. and Charles M. Fahlbusch, Asst. Atty. Gen., Miami, for petitioner.
Michael H. Tarkoff of Flynn and Tarkoff, Miami, for respondent.
BARKETT, Justice.
We have for review Slappy v. State, 503 So.2d 350 (Fla. 3d DCA 1987), based on express and direct conflict with Blackshear v. State, 504 So.2d 1330 (Fla. 1st DCA 1987). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve the decision below.
The issue in this case is the appropriate procedure to follow when a claim of racial discrimination through the exercise of peremptory challenges has been raised.
Slappy, a black defendant, was tried for carrying a concealed firearm. Four of the state's six peremptory challenges were used to exclude blacks from the panel, although all four had indicated an ability to serve as fair and impartial jurors. After the fourth challenge, the defense objected and the following exchange then occurred:
THE COURT: All right. At this particular juncture, Ms. Lumpkin is the fourth black juror excused by the state.
State, why are you excusing Ms. Lumpkin?
ASSISTANT STATE ATTORNEY: She said she thinks she knew [the defense counsel] from previously in her response. Whether or not she did or not did not  I don't want someone on a defense 
THE COURT: Why did you excuse Ms. Jordan?
ASSISTANT STATE ATTORNEY: She didn't seem to be secure about sitting on a jury. She asked questions, I think, twice, whether or not she needs to know anything about the law or criminal justice system. Her health doesn't seem to be very good. I just didn't want someone like that on the jury.
THE COURT: How about Mr. Williams?
ASSISTANT STATE ATTORNEY: Both Mr. Williams and Mrs. Williams I excused because they're both teachers, assistant teachers, and both of them at elementary schools. That to me indicates a degree of liberalism that I prefer not have [sic] on a jury.
THE COURT: Liberalism?

*20 ASSISTANT STATE ATTORNEY: Yeah, maybe more sympathetic to people who go astray than people who don't have to deal with kids in a classroom. Always getting into trouble.
DEFENSE COUNSEL: Of course. They accepted Mr. Farrar, who is also a teacher, and I excused him.
ASSISTANT STATE ATTORNEY: He was also in the army.
THE COURT: You never heard of liberals in the army?
ASSISTANT STATE ATTORNEY: I think you are less likely to find help in the military than elementary school.
503 So.2d at 352.
After this exchange, the trial court accepted the state's explanations and denied the motion to strike the panel. Id. On appeal, the Third District held that the trial court erroneously believed it was bound by the state's facially neutral explanations. The district court essentially found that these explanations were not supported by the record, and remanded for a new trial.
Despite continuing efforts, racial and other discrimination remains a fact of this nation's evolving history. The United States Supreme Court has characterized it as a problem needing unceasing attention. McCleskey v. Kemp, ___ U.S. ___, 107 S.Ct. 1756, 1775, 95 L.Ed.2d 262, rehearing denied, ___ U.S. ___, 107 S.Ct. 3199, 96 L.Ed.2d 686 (1987). As the Supreme Court elsewhere has noted:
[W]e ... cannot deny that, 114 years after the close of the War Between the States ..., racial and other forms of discrimination still remain a fact of life, in the administration of justice as in our society as a whole. Perhaps today that discrimination takes a form more subtle than before. But it is not less real or pernicious.
Rose v. Mitchell, 443 U.S. 545, 558-59, 99 S.Ct. 2993, 3001, 61 L.Ed.2d 739 (1979).
One would think it unnecessary to point out again, as did the court in Batson v. Kentucky, 476 U.S. 79, 87-88, 106 S.Ct. 1712, 1717-18, 90 L.Ed.2d 69 (1986) (citation omitted) (quoting Strauder v. West Virginia, 100 U.S. (10 Otto) 303, 308, 25 L.Ed. 664 (1879)), that "[d]iscrimination within the judicial system is [the] most pernicious." It would seem equally self-evident that the appearance of discrimination in court procedure is especially reprehensible, since it is the complete antithesis of the court's reason for being  to insure equality of treatment and evenhanded justice. Moreover, by giving official sanction to irrational prejudice, courtroom bias only enflames bigotry in the society at large.
The need to protect against bias is particularly pressing in the selection of a jury, first, because the parties before the court are entitled to be judged by a fair cross section of the community, and second, because our citizens cannot be precluded improperly from jury service. Indeed, jury duty constitutes the most direct way citizens participate in the application of our laws.
Unfortunately, the nature of the peremptory challenge makes it uniquely suited to masking discriminatory motives. See Batson, 476 U.S. at 96, 106 S.Ct. at 1722-23. Traditionally, a peremptory challenge permits dismissal of a juror based on no more than "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another." 4 W. Blackstone, Commentaries 353 (1807). This ancient tradition, however, is to some degree inconsistent with the requirements of the Florida and federal constitutions. We thus cannot permit the peremptory's use when it results in the exclusion of persons from jury service due to constitutionally impermissible prejudice. To the extent of the inconsistency, the constitutional principles must prevail, notwithstanding the traditionally unlimited scope of the peremptory.
In interpreting our own Constitution, this Court in State v. Neil, 457 So.2d 481 (Fla. 1984), clarified sub nom, State v. Castillo, 486 So.2d 565 (1986), recognized a protection against improper bias in the selection of juries that preceded, foreshadowed and *21 exceeds the current federal guarantees.[1] We today reaffirm this state's continuing commitment to a vigorously impartial system of selecting jurors based on the Florida Constitution's explicit guarantee of an impartial trial. See Art. I, § 16, Fla. Const.
Despite this commitment, much litigation has arisen over its application to the facts of particular voir dire examinations. As in this case, one of the most frequently litigated issues in both the federal and state courts is the burden of proof, its nature and who must bear it. See Batson, 476 U.S. at 90, 106 S.Ct. at 1719; Whitus v. Georgia, 385 U.S. 545, 550, 87 S.Ct. 643, 646, 17 L.Ed.2d 599 (1967); Hernandez v. Texas, 347 U.S. 475, 478-81, 74 S.Ct. 667, 670-72, 98 L.Ed. 866 (1954); Akins v. Texas, 325 U.S. 398, 403-04, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692, rehearing denied, 326 U.S. 806, 66 S.Ct. 86, 90 L.Ed. 491 (1945); Martin v. Texas, 200 U.S. 316, 26 S.Ct. 338, 50 L.Ed. 497 (1906); State v. Jones, 485 So.2d 1283 (Fla. 1986); Pearson v. State, 514 So.2d 374 (Fla. 2d DCA 1987); Floyd v. State, 511 So.2d 762 (Fla. 3d DCA 1987); Blackshear; Kibler v. State, 501 So.2d 76 (Fla. 5th DCA 1987).
This Court early had recognized the impossible burden imposed by Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, rehearing denied, 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442 (1965), which had required a defendant to show discriminatory practices employed systematically in a number of similar cases or contexts. In Neil, therefore we established the following test:
A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race.
457 So.2d at 486 (based on Art. I, § 16, Fla. Const.) (footnote omitted).
Unfortunately, deciding what constitutes a "likelihood" under Neil does not lend itself to precise definition. It is impossible to anticipate and articulate the many scenarios that could give rise to the inference required by Neil and Batson. We know, for example, that number alone is not dispositive, nor even the fact that a member of the minority in question has been seated as a juror or alternate. United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987); United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986); Fleming v. Kemp, 794 F.2d 1478 (11th Cir.1986); Neil; Pearson; Floyd. Indeed, the issue is not whether several jurors have been excused because of their race, but whether any juror has been so excused, independent of any other. This is so because
the striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors.
Gordon, 817 F.2d at 1541. Accord David; Fleming; Pearson; Floyd. As the Eleventh Circuit has stated,

Batson restates the principle that "`[a] single invidiously discriminatory governmental act' is not `immunized by the absence of such discrimination in the making of other comparable decisions.'" Batson, supra, 106 S.Ct. at 1722, quoting Arlington Heights v. Metropolitan Housing [Development] Corp., 429 U.S. 252, 266 n. 14, 97 S.Ct. 555, 564 n. 14, 50 L.Ed.2d 450 (1977).
Fleming, 794 F.2d at 1483. Accord Pearson.
We nevertheless resist the temptation to craft a brightline test. Such a rule could cause more havoc than the imprecise standard we employ today, since racial discrimination itself is not confined to any specific number of forms or effects. Instead, we affirm that the spirit and intent of Neil was not to obscure the issue in *22 procedural rules governing the shifting burdens of proof, but to provide broad leeway in allowing parties to make a prima facie showing that a "likelihood" of discrimination exists. Only in this way can we have a full airing of the reasons behind a peremptory strike, which is the crucial question. Recognizing, as did Batson, that peremptory challenges permit "those to discriminate who are of a mind to discriminate," 476 U.S. at 96, 106 S.Ct. at 1723, we hold that any doubt as to whether the complaining party has met its initial burden should be resolved in that party's favor. If we are to err at all, it must be in the way least likely to allow discrimination.
Once a trial judge is satisfied that the complaining party's objection was proper and not frivolous, the burden of proof shifts. At this juncture, Neil imposes upon the other party an obligation to rebut the inference created when the defense met its initial burden of persuasion. This rebuttal must consist of a "clear and reasonably specific" racially neutral explanation of "legitimate reasons" for the state's use of its peremptory challenges. Batson, 476 U.S. at 96-98 & n. 20, 106 S.Ct. at 1722-24 & n. 20. While the reasons need not rise to the level justifying a challenge for cause, they nevertheless must consist of more than the assumption
that [the veniremen] would be partial to the defendant because of their shared race... . Nor may the [party exercising the challenge] rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections." ... If these general assertions were accepted as rebutting a ... prima facie case, the Equal Protection Clause "would be but a vain and illusory requirement."
Id. at 97-98, 106 S.Ct. at 1723, (quoting Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972), and Norris v. Alabama, 294 U.S. 587, 598, 55 S.Ct. 579, 584, 79 L.Ed. 1074 (1935)). Part of the trial judge's role is to evaluate both the credibility of the person offering the explanation as well as the credibility of the asserted reasons. These must be weighed in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record.
We agree with the district court below that a judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact. In order to permit the questioned challenge, the trial judge must conclude that the proffered reasons are, first, neutral and reasonable and, second, not a pretext. These two requirements are necessary to demonstrate "clear and reasonably specific ... legitimate reasons." Batson, 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20. Moreover, they serve the goal of demonstrating a "neutral explanation related to the particular case to be tried," id. at 98, 106 S.Ct. at 1723, and that "the questioned challenges were not exercised solely because of the prospective jurors' race." Neil, 457 So.2d at 486-87 (footnote omitted).
These requirements lie at the heart of the nonexclusive list of five factors the Slappy court concluded would weigh against the legitimacy of a race-neutral explanation. 503 So.2d at 355. We agree that the presence of one or more of these factors will tend to show that the state's reasons are not actually supported by the record or are an impermissible pretext: (1) alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a challenge based on reasons equally applicable to juror who were not challenged. See id.
We recognize the great responsibility and discretion this issue reposes in trial judges and caution both judges and litigants against the dangers observed by Justice Marshall in his concurring opinion in Batson:
Nor is outright prevarication ... the only danger here. "[I]t is even possible *23 that an attorney may lie to himself in an effort to convince himself that his motives are legal." ... A prosecutor's own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is "sullen," or "distant," a characterization that would not have come to his mind if a white juror had acted identically. A judge's own conscious or unconscious racism may lead him to accept such an explanation as well supported... . [P]rosecutors' peremptories are based on their "seat-of-the-pants instincts." ... Yet "seat-of-the-pants instincts" may often be just another term for racial prejudice. Even if all parties approach the Court's mandate with the best of conscious intentions, that mandate requires them to confront and overcome their own racism on all levels....
Batson, 476 U.S. at 106, 106 S.Ct. at 1728 (Marshall, J., concurring) (citations omitted).
Turning now to the facts of this case, we find that the Third District reached a result in harmony with Batson, Neil and Article I, section 16 of the Florida Constitution. The defense called the court's attention to a pattern of using peremptory challenges to exclude jurors of a cognizable minority who had indicated no impartiality or unfairness, and whom the state had failed even to question. This showing was sufficient of itself to require explanation, and thus shifted the burden to the state to present specific reasons based on the jurors' responses at voir dire or other facts evident from the record. Jones. Recognizing this requirement, the trial court properly conducted an inquiry on the question.
However, we hold that the state's explanation failed to satisfy its burden of proof.
As to the first requirement in this instance, we agree that the state demonstrated that "liberalism" was neutral and reasonable. The prosecutor argued that political liberals were more likely to be lenient to defendants than conservatives, and thus less favorable to the state's position at this particular trial. Although others might argue, as does this petitioner, that liberals also are more likely to convict someone for violating gun-control laws, we do not believe the state's assertion should be set aside merely because opinions may differ among reasonable men. The function of the trial court in determining the existence of reasonableness is not to substitute its judgment for that of the prosecutor, but merely to decide if the state's assertions are such that some reasonable persons would agree.
However, reasonableness alone is not enough, since the state also must demonstrate a second factor  record support for the reasons given and the absence of pretext. Thus, where the total course of questioning of all jurors shows the presence of any of the five factors listed in Slappy and the state fails to offer convincing rebuttal, then the state's explanation must be deemed a pretext. In the present case, the utter failure to question two of the challenged jurors on the grounds alleged for bias, 503 So.2d at 355, renders the state's explanation immediately suspect.[2] Moreover, we cannot accept the state's contention that all elementary school assistants, and these two in particular, were liberal. If they indeed possessed this trait, the state could have established it by a few questions taking very little of the court's time.[3]
We find that, when the state engages in a pattern of excluding a minority without apparent reason, the state must be prepared to support its explanations with neutral reasons based on answers provided at voir dire or otherwise disclosed on the record itself. This requirement helps ensure procedural regularity and racial neutrality. *24 By failing to ask any questions, the state failed to demonstrate that the alleged "liberalism" of these two jurors actually existed. Although the trial court's findings are entitled to deference on appeal, Batson, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, the district court essentially determined that the state's explanation was not supported by the record. Since we also find no record basis for the state's explanation, we do not disturb the district court's finding.
We thus must find reversible error even though the final jury panel apparently contained one black. See David, 803 F.2d at 1571; Fleming. Accord United States v. McDaniels, 379 F. Supp. 1243, 1244 (E.D. La. 1974); Commonwealth v. Soares, 377 Mass. 461, 473, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); People v. Seals, 153 Ill. App.3d 417, 106 Ill.Dec. 316, 320, 505 N.E.2d 1107, 1111 (Ill. App. 1987). This result is consistent with Neil, where we found error even though a black served as an alternate juror. 457 So.2d at 483.
For the reasons herein, we approve the decision of the Third District.
It is so ordered.
EHRLICH, SHAW and GRIMES, JJ., concur.
McDONALD, C.J., dissents with an opinion, in which OVERTON, J., concurs.
McDONALD, C.J., dissenting.
First, I want to emphasize that I believe in the tenets of State v. Neil, 457 So.2d 481 (Fla. 1984). The indiscriminate excusals of blacks from juries through the peremptory challenge process has no place in Florida's jurisprudence. This does not mean, however, that a black person is immune from being peremptorily struck or that artificial or unreasonable barriers should be erected to judge and review the use of peremptory strikes. Admittedly, fair and reasonable criteria to assure that persons are being excused for reasons other than race are difficult to formulate. It is the trial judge's responsibility to inquire and evaluate the reasons. The judge is then to use his reasoned judgment in deciding whether the challenge is being made solely because of the prospective juror's race.
In this case the trial judge knew of Neil. He made the inquiry. He was satisfied that good reasons, other than race, existed. His rulings should not be vacated unless there is evidence that he abused his discretion in the evaluation process. This is not shown in this case. Further, we need to be careful to avoid a mini-trial in the jury selection process. I believe the majority opinion may lead to that.
OVERTON, J., concurs.
NOTES
[1] Neil followed the adoption of similar standards in California, People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 148 Cal. Rptr. 890 (1978), Massachusetts, Commonwealth v. Soares, 377 Mass. 461, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979), and New York, People v. Thompson, 79 A.D.2d 87, 435 N.Y.S. 739 (1981).
[2] The rule in Neil would be meaningless indeed if, by simply declining to ask any questions at all, the state could excuse all blacks from the venire.
[3] Similarly, the state excused another black juror at least partly because of purported ill health, although the record is far from clear that any such characteristic existed. A single question posed to the juror could have established the existence or nonexistence of illness.