547 So.2d 1254 (1989)
Sylvester McKINNON and Joyce L. Scott, Appellants,
v.
STATE of Florida, Appellee.
Nos. 87-0726, 87-0727.
District Court of Appeal of Florida, Fourth District.
August 16, 1989.
Rehearing Denied September 20, 1989.
*1255 Paul F. King of Edna L. Caruso, P.A., West Palm Beach, for appellants.
Robert A. Butterworth, Atty. Gen., Tallahassee, Joy B. Shearer and Lynn Waxman, Asst. Attys. Gen., West Palm Beach, for State.
POLEN, Judge.
Sylvester McKinnon and Joyce L. Scott, codefendants below, individually seek review of their separate convictions of trafficking in heroin, trafficking in cocaine and conspiracy to traffic in heroin. Although appellants raised numerous independent issues on appeal, the two cases have been consolidated for opinion purposes because we find one mutual issue merits discussion and requires reversal. Appellants allege that as a black man and black woman, they were denied the right to a fair trial when the state was allowed to use two peremptory challenges to excuse black jurors.
The right of an accused to an impartial jury cannot be fully guaranteed when peremptory challenges are used to purposefully exclude members of a cognizable racial group. Because the use of peremptory challenges may be discriminatory, a specific procedure has been outlined by the supreme court to determine whether peremptory challenges have been used to exclude persons due to impermissible racial discrimination. State v. Neil, 457 So.2d 481 (Fla. 1984); State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988).
Initially, the party claiming discriminatory use of peremptory challenges has the burden of making a timely objection and demonstrating on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race. Slappy, 522 So.2d at 22. Broad leeway is provided to allow the parties to make a prima facie showing that likelihood of discrimination exists. Any doubt as to whether the complaining party has met its initial burden should be resolved in the party's favor. Id.
During voir dire, Mrs. Burton, a black woman, was called as a prospective juror. She stated she had been employed at the county home hospital for nine and one-half years and had worked several other places doing private duty work. In her spare time she served as secretary of a neighborhood club that helped the sick. After the prospective jurors, including Burton, were excused for the day, the prosecutor advised the court that she witnessed Burton chatting with defendant's small child who was present in the courtroom. The court remarked that it "did not notice any problem" but it would advise the jurors that this was inappropriate conduct.
Voir dire continued and Mrs. Burton was asked no further questions. The state exercised a peremptory challenge against Mrs. Burton. In response to the challenge, defense counsel requested that the prosecutor state the reasons other than racial for the challenge. The court denied the request, told defense counsel that "[y]ou can put anything you want the record to reflect when we are through," and continued to hear the other challenges.
The prosecutor then exercised a peremptory challenge against Miss Jones, a black *1256 evangelist minister. In response to the challenge the trial court commented: "Now, she is a black person, too. So, you can argue your motion to that later." A third black prospective juror was then accepted by the state. The jury was sworn in, instructed and released.
After voir dire was completed and the jury released, the court inquired into defense counsel's objections to the state's peremptory challenges to Burton and Jones and stated "[s]o we have one black juror on the jury. We had two that were excused by the State. So, what's your objection?" Defense counsel stated he objected because both exclusions were based on racial discrimination. The following discourse ensued:
THE COURT: Okay. Well, the reason I overruled your objection about, without comment on my part, I got not even the slightest impression of this and evidence to challenge a racial group and I did not feel that there was any likelihood that the reason they were excused was because of race.
So, according to that case there is really no inquiry needed.
MR. WINKLER: I still request an inquiry on the State, for the record.
MS. PUCILLO: Your Honor, to save time, I agree with Your Honor in terms of the Neal (sic) case, I think it requires no obligation on the part of the State to put anything on the record. However, just because there is a record and I don't mind putting it on 
THE COURT: Go ahead.
MS. PUCILLO:  I certainly did not excuse either juror because they are black. As I commented, Mrs. Burton left the room and gave Defendant Scott's seven-year-old child a large hug, was talking to him. That concerns me greatly, that among other personal observations (sic) of her, generally, my observations of her intelligence level had led me to also excuse her from the jury.
As to Mrs. Jones, she is a minister. It is my practice, generally, to excuse people who are in the religious profession from juries because I fear there is a great deal of sympathy they may extend in essence.
Those are always preliminary challenges. Of course, Mrs. Keel is a black woman and was not excused.
In the instant case, the defendants' objections to the challenges were timely and the challenged individuals were members of a distinct racial group. The fact that one black juror was eventually selected is not dispositive in disproving the likelihood of discrimination. The question is whether any juror has been excused due to race. Slappy, 522 So.2d at 21. Allotting defendants leeway in presenting a prima facie case, and considering that two black jurors had been challenged, perhaps establishing a pattern of discrimination, the burden shifted to the state to rebut the inferences of racial motivation. Id. at 22.
When a Neil objection is properly raised, the court cannot simply accept the state's reasons. The reasons must be more than mere assumptions and be supported by answers provided at voir dire or otherwise disclosed on the record. Id. at 23; Tillman v. State, 522 So.2d 14 (Fla. 1988). The record must demonstrate "clear and reasonably specific" racially neutral explanations of "legitimate reasons" for use of the challenges. Slappy, 522 So.2d at 22.
The better policy is to hold a full hearing during voir dire, and failure to do so may in some cases be fatal error. Cf. Blackshear v. State, 521 So.2d 1083 (Fla. 1988). However, in light of the great deference afforded trial judges in such matters, if the record reflects the judge considered the matter at the time he evaluated defendants' objections, and the record evidences rational, racially neutral bases for the challenges, that is sufficient hearing of the matter. Williams v. State, 536 So.2d 1088 (Fla. 4th DCA 1988).
At the time the challenge to Burton was raised the trial court was aware of the state's allegation that Burton had contact with the codefendant's child. The court may have viewed the challenge as reasonable. However, the record does not reflect support for the allegation. Neither the *1257 judge nor defense counsel acknowledged observation of the behavior and Burton was not questioned to substantiate the state's allegation. See Hill v. State, 547 So.2d 175 (Fla. 4th DCA 1989); Williams v. State, 547 So.2d 179 (Fla. 4th DCA 1989).
As stated in Slappy, in response to the absence in the record to support the state's allegation that its challenge was based on the juror's ill health, "[a] single question posed to the juror could have established the existence or nonexistence of illness." Id. at 23, n. 3. There, as well as in the instant case, further inquiry was needed. See also Reed v. State, 14 F.L.W. 298 (Fla. June 15, 1989). The prosecutor's after-the-fact allegation that the challenge was also based on her personal observations about Burton's intelligence level is unavailing. While Burton's responses may at times have been a bit convoluted, the record evidences she was fully capable of responding to the questions posed and understood the complexity of the case. The trial court could not have been apprised of the state's concern about her intellectual ability. Accordingly, the trial court committed reversible error in permitting excusal of Burton.
The second challenge excusing Jones, an evangelic minister, based on the prosecutor's policy to excuse people in the religious profession because they are generally overly sympathetic, is reasonable and supported by the record. No further inquiry was necessary and excusal of Jones proper.
As to the other issues raised by each party, we find no error. The judgments and sentences of both appellants are reversed and the cases remanded for new trial.
DOWNEY, J., concurs.
GARRETT, J., concurs in part and dissents in part with opinion.
GARRETT, Judge, concurring in part and dissenting in part.
Although I agree that some peremptory challenge are exercised for discriminatory reasons, only racially motivated peremptory challenges have been thus far condemned. Slappy. All non-racially motivated reasons remain viable grounds for exercising peremptory challenges. As to the peremptory challenge of Mrs. Jones, although repugnant in light of First Amendment rights, challenging a juror on the basis of religious beliefs is presumably still allowed.
I dissent as to the reversal for the peremptory challenge of Mrs. Burton. She was individually questioned during voir dire. Before the jury was sworn, the trial judge ordered an overnight recess. At the break, the prosecutor advised the court that while Mrs. Burton was leaving the courtroom she stopped to hug codefendant Scott's child. The trial continued the next day. Neither the state nor either defendant asked Mrs. Burton any additional questions. The state used a peremptory challenge to excuse her. The defense objected and requested a statement as to the non-racial reason for the challenge. The trial judge postponed hearing the response until after completing jury selection. After the jury was sworn, the state elaborated on the hugging incident and added her intelligence level as a ground for exercising its peremptory challenge of Mrs. Burton.
The attack upon Mrs. Burton's intelligence was too little and too late. However, it disturbs me that we reverse because the record does not support the state's allegations as to Mrs. Burton's hugging actions. While I agree a single question posed to her could have established the existence or nonexistence of any feeling for codefendant Scott or his child, I do not agree such burden sub judice fell solely upon the state.
This court has condemned "gotcha" tactics. State v. D.C.W., 426 So.2d 970 (Fla. 4th DCA 1982). Before Mrs. Burton was excused, the codefendants knew of the hugging incident, yet neither chose to question her about it. The failure to make a proper record is as much the defendants' fault as it is the state's. The defendants had the opportunity to inquire, therefore, I would find they cannot benefit from the lack of a record caused in part by their *1258 inaction. If the state's failure to examine a juror makes its race-neutral explanation suspect, then a defendant's failure to examine a juror ought to make any objection thereto suspect. I recognize an inquiry by the trial judge is required upon a meeting of the threshold showing a racially discriminatory use of a peremptory challenge. I agree that the proper time to conduct such inquiry is during voir dire, not on appeal. I agree that the proper tribunal to conduct the inquiry is the trial court, not the appellate court. See, Stokes v. State, 548 So.2d 188, 190 (Fla. 1989). But the proper persons to perfect a record are the parties themselves.