551 So.2d 492 (1989)
Gordon Larry WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. BT-146.
District Court of Appeal of Florida, First District.
March 8, 1989.
On Motion for Rehearing October 16, 1989.
*493 Michael E. Allen, Public Defender, and P. Douglas Brinkmeyer, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
AFFIRMED.
BOOTH, WIGGINTON, and ZEHMER, JJ., concur.

ON MOTION FOR REHEARING
ZEHMER, Judge.
Gordon Williams, appellant, moves for rehearing of our decision affirming, without opinion, his conviction of robbery with a deadly weapon and aggravated assault. The sole ground for reversal urged on appeal is whether the lower court erred in allowing the prosecutor to excuse four black jurors upon peremptory challenges in violation of the principles announced in State v. Neil, 457 So.2d 481 (Fla. 1984). After our decision was filed on March 8, 1988, the supreme court released its opinions in Blackshear v. State, 521 So.2d 1083 (Fla. 1988), and State v. Slappy, 522 So.2d 18 (Fla. 1988). Appellant contends that these decisions require reversal of his conviction and remand for a new trial. Because these decisions have significantly altered the minimum procedural requirements that must be followed in the trial court once a Neil objection has been properly raised, they are clearly pertinent to the resolution of this appeal. Therefore, we grant appellant's motion for rehearing and now reconsider the facts of this case in light of these opinions.
Appellant, a black male, was charged with two counts of armed robbery and one count of aggravated assault in connection with a bank robbery. (R. 11). At trial, the court noted that each party could exercise ten peremptory challenges and that 45 prospective jurors had been called for possible service in the case. (T. 5). After briefly discussing the case with the prospective jurors, the court asked that those people who might have problems serving on the jury remain during recess. Several persons remained, and after speaking individually with each of them, the court discussed with the attorneys their reasons to be excused from service. Discussion on the record revealed that juror number 245, a black man, was on probation for committing aggravated assault with a deadly weapon. (T. 40). The court granted the defense request to excuse this juror for cause. (T. 48). Later in this discussion, the court stated to the attorneys:
I didn't count the number of blacks on the jury panel, but my recollection is that it was probably at least ten on there. The defendant is black. I want to take into consideration if I excuse anyone black whether or not the defendant would still have the opportunity of having a fair selection from blacks being on the jury. So, I will put a question mark by those two.
(T. 49-50). The court excused a total of four jurors for cause: number 245 and three others whose race is not revealed on the record. (T. 53). The court then called 21 persons to be examined during voir dire. (T. 54). The record does not reveal the number of blacks in this 21-person venire. Upon completion of voir dire by both sides, the court directed that the attorneys alternately exercise their peremptory challenges, beginning with the state. (R. 86-87). After the state exercised seven of its peremptory challenges, appellant's attorney objected, stating
Judge, I make an objection at this time that four black people have been stricken by the State and my client is black and at *494 this time I think that is a pattern of excluding blacks.
(T. 89). The court replied:
At this time Mrs. Dunphy is a black juror and I don't think the State has systematically excused everyone so we will see what happens when the jury is selected.
(T. 89). Apparently, Mrs. Dunphy was the only black juror remaining on the panel at that time. Appellant's attorney made no further objections regarding the state's use of its peremptory challenges. The attorneys continued the challenge process and ultimately agreed upon a jury composed of six members and one black alternate. Mrs. Dunphy, a black, was one of the jurors. (T. 91).
After the evidence was presented and the jury retired to deliberate, the court stated:
The Defendant is present. We are in chambers. The jury is not. One thing that I thought maybe we ought to make sure the record reflects in case it becomes significant is that during the course of the voir dire after the State had excused four black jurors the defense counsel made a motion under the initial case. I, at that time, found that there was no basis or substantiation because the jury had not been selected, and as a matter of fact, I think at that time a juror who was a black juror had not been selected, but that juror was selected by the State. Thereafter, the Defendant struck that black juror that had been selected by the State and thereafter, no additional black jurors came up. So, I would reiterate my finding which I found earlier and that is that there has been no proof by the Defendant that there has been a systematic exclusion of any particular race or nationality, and I do want the record to reflect also that the alternate juror was black. He indicated that he was from Africa, and there is another juror who is number one who is a foreigner, I couldn't tell exactly what her nationality is.
(T. 338, 339). One half hour after the jury retired for deliberation, it returned a verdict finding appellant guilty of all three charges. (T. 349).
In State v. Neil, 457 So.2d 481, the supreme court condemned the peremptory challenge of jurors solely on the grounds of race and described the general procedure to be followed when a party has reason to believe that such practice is taking place. The objecting party must (1) make a timely objection, (2) demonstrate on the record that the challenged persons are members of a distinct racial group, and (3) demonstrate on the record the existence of a strong likelihood that the challenged persons were challenged solely because of their race. The court must then decide whether the objecting party has met these requirements and whether there is a substantial likelihood that the challenges have been exercised solely on the basis of the juror's race. If the court finds no such likelihood, it need not make further inquiry into the basis of challenges. Conversely, if the court determines that such likelihood exists, it must make further inquiry of the party exercising the challenges and the burden shifts to that party to show the challenges were not exercised solely on the basis of race. Id. at 486, 487.
In State v. Slappy, 522 So.2d 18, the supreme court approved the district court of appeal decision, reported at 503 So.2d 350 (Fla. 3d DCA 1987), holding the trial court had failed, upon the defendant's timely objection, to make proper inquiry into the potential for racial bias in the selection of the jury. The court recognized that "deciding what constitutes a `likelihood' under Neil does not lend itself to precise definition." Id. at 21. The court noted, for example, "that number alone is not dispositive, nor even the fact that a member of the minority in question has been seated as a juror or alternate." "Indeed," the court further stated, "the issue is not whether several jurors have been excused because of their race, but whether any juror has been so excused, independent of any other." Ibid. The court then concluded:
We nevertheless resist the temptation to craft a brightline test. Such a rule could cause more havoc than the imprecise standard we employ today, since racial discrimination itself is not confined *495 to any specific number of forms or effects. Instead, we affirm that the spirit and intent of Neil was not to obscure the issue in procedural rules governing the shifting burdens of proof, but to provide broad leeway in allowing parties to make a prima facie showing that a "likelihood" of discrimination exists. Only in this way can we have a full airing of the reasons behind a peremptory strike, which is the crucial question. Recognizing, as did Batson, that peremptory challenges permit "those to discriminate who are of a mind to discriminate," 476 U.S. 79, at 96 [106 S.Ct. 1712, at 1723, 90 L.Ed.2d 69 (1986)], we hold that any doubt as to whether the complaining party has met its initial burden should be resolved in that party's favor. If we are to err at all, it must be in the way least likely to allow discrimination.

522 So.2d at 21-22 [emphasis added]. The court considered the sufficiency of the reasons given by the prosecutor upon further inquiry by the trial court, and set forth five factors to be considered in determining the sufficiency of the reasons given for exercising a peremptory challenge of a juror. We need not consider these factors since, in the case before us, the trial court never undertook such an inquiry.
In Blackshear v. State, 521 So.2d 1083, the prosecutor used eight of ten peremptory challenges to exclude blacks from the jury and the resulting jury was all white, with a black alternate juror. Blackshear was a black man. His counsel raised a timely objection to the wholesale exclusion of blacks on the authority of Neil, and the trial court failed to conduct an inquiry at that time. The supreme court quashed the decision of this court, reported at 504 So.2d 1330 (Fla. 1st DCA 1987), approving the trial court's denial of Blackshear's motion to strike the entire panel and held that the trial court failed to timely conduct the inquiry required under Neil to determine that the state's peremptory challenges were not based solely on race. The court stated in pertinent part:
Based on our decision today in Slappy, we hold that the burden of proof clearly had shifted to the state. The state conceded that it had used its peremptory challenges to exclude eight members of a cognizable group from the panel. 504 So.2d at 1330-31. At the time the defense's objection was made, not a single black member remained on the prospective panel. There was no indication that any of the excluded blacks would be unfair or partial, nor did the prosecutor so contend. See State v. Jones, 485 So.2d 1283 (Fla. 1986). Indeed, when pressed by the trial court, the state at first was unable to recall any neutral record-based reason for excluding eight blacks from the panel. 504 So.2d at 1331.
521 So.2d at 1084. The court further held that waiting to conduct the hearing on the defendant's objections until well after the trial concluded was untimely, emphasizing, "When a Neil objection is properly raised, as it was in this instance, the time for the hearing has come"; the "requirements established by Slappy cannot possibly be met unless the hearing is conducted during the voir dire process" because "only at this time does the court have the ability to observe and place on the record relevant matters about juror responses or behavior that may be pertinent to a Neil inquiry." Ibid.
Referring back to the procedure approved in Neil, it appears from the record before us that appellant satisfied the first two elements in that (1) a timely objection was made and (2) it was demonstrated on the record that the challenged persons were members of the defendant's distinct racial group. The crucial question is whether the record demonstrates the requisite "likelihood" that the black jurors were challenged by the prosecutor solely on grounds of race.
In view of the strong pronouncements in Slappy and Blackshear, we are now convinced that the trial court erred in not conducting an inquiry at the time appellant objected to the state's use of peremptory challenges. The prosecutor did not volunteer any explanation of the basis of the challenges. The trial court's comments showed obvious concern that the state's exercise of peremptory challenges to excuse *496 black jurors not exhaust the available blacks and result in an all-white jury. Yet the trial court never conducted an inquiry of the prosecutor's reason for challenging the black jurors, noting only that at least one black remained on the jury panel. Instead, the court concluded that the defendant had not demonstrated the requisite "likelihood" of racial discrimination. This fails to comport with Slappy and Blackshear in several respects. First, the trial court's comments suggest a concern with whether any blacks would be available in the venire to serve on the jury rather than whether any particular juror was improperly excused solely on the basis of race, contrary to the supreme court's admonition in Slappy. Second, the trial court's comments when appellant's objection was made indicate some uncertainty as to the state's motive for excusing the black jurors, and thus supports the conclusion that the defendant's objection "was proper and not frivolous." Slappy, 522 So.2d at 22. Moreover, any doubt as to whether the defendant met his burden of showing this likelihood must be resolved in the defendant's favor under Slappy. Third, we have carefully reviewed the transcript of the jury voir dire, and no apparent neutral explanation for challenging some of the black jurors appears on the face of the record; "there was no indication that any of the excluded blacks would be unfair or partial." Blackshear, 521 So.2d at 1084. We recognize that when the jury selection was completed the jury was comprised of one black member and a black alternate, but the presence of mere numbers is not the real test under Slappy. Furthermore, the failure to promptly inquire of the prosecutor's explanation of its challenges at the time of the objection deprived the defendant and the court of "the ability to observe and place on the record relevant matters about juror responses or behavior that may be pertinent to a Neil inquiry." Blackshear, 521 So.2d at 1084.
We have no doubt that the trial judge in this case believed he had fully complied with the requirements of Neil in following the procedure that he did under the decisional law existing at the time of trial. But we must apply the decisional law in existence at the time of appellate review in deciding the issue before us, and later supreme court decisions have rendered invalid the procedure followed below. These supreme court decisions require that the judgment of conviction and sentence be reversed and the cause remanded for a new trial. Hargrove v. State, 530 So.2d 441 (Fla. 4th DCA 1988).
REVERSED AND REMANDED.
WIGGINTON, J., concurs.
BOOTH, J., dissents with written opinion.
BOOTH, Justice, dissenting.
The trial court did not err in proceeding without further inquiry on defendant's challenge to the composition of the jury under the rule of State v. Neil, 457 So.2d 481 (Fla. 1984). Even under State v. Slappy, 522 So.2d 18 (Fla. 1988), the inference of impermissible discrimination does not arise merely on the exercise of a peremptory challenge to a member of a particular group. In Slappy, supra, the Florida Supreme Court ruled that the trial court must initially determine that the defendant's challenge is proper and not frivolous. Slappy, 522 So.2d at 22. Here, the trial court ruled against the challenge, and defendant has not shown, on the record before us, that the trial court abused its discretion in so ruling.
In the instant case, the record shows that most of the prospective jurors who were excused by the State had come forward of their own accord or under questioning, and revealed personal problems with their serving on the jury. Defendant did not establish by questioning during jury selection the race of the prospective jurors and has not stated the name or juror number of those persons he classifies as identifiable subjects of discrimination based on race.
The claim of systematic exclusion was put to the court by defendant's objection stating that "four black people had been stricken by the State, and my client is black." These undisputed facts are insufficient to raise any inference. Slappy makes it clear that it is not numbers, either the numbers of persons excused or the numbers remaining, that is determinative, *497 but rather the identity of the individual(s) who have been excused through the State's exercise of peremptory challenges. Even under the "broad leeway" rule of Slappy,[1] the movant's burden remains to identify the persons excused and establish the fact that the individuals excused were members of a racial or other group and that they were eliminated from the jury through the State's exercise of peremptory challenge(s). This is the minimum showing required before any inference of improper motive can arise. On appeal, the record must reveal these basic facts in order to establish that the trial court erred in not conducting further inquiry.
Further supporting the trial court's ruling is the fact that the State accepted at least three black jurors, one as an alternate and one who was later excused peremptorily by the defense. The fact that members of the race or group in question do remain on the jury is properly considered by the court in its initial determination of whether to hold a hearing on the motion. In Reed v. State, 14 FLW 298 (Fla. June 15, 1989), the Florida Supreme Court held: "The fact that a prosecutor has left unchallenged other blacks on the venire may be a factor in a trial judge's intial determination of whether there is a strong likelihood that jurors are being challenged because of their race."
Certainly, it was not the intent of Slappy to either eliminate the Neil prerequisites or to create two classes of veniremen, viz: (1) those against whom peremptory challenges are freely allowed without inquiry; and (2) those against whom no peremptory challenges are allowed without first obtaining clearance after official inquiry. Such classifications and requirements would be inimical to guarantees of fair trial and equal protection.
We should affirm the judgment below.
NOTES
[1] "[W]e affirm the spirit and intent of Neil ... was to provide broad leeway in allowing parties to make a prima facie showing that a `likelihood' of discrimination exist." (522 So.2d at 21-22).