562 So.2d 787 (1990)
Charles SMITH and David Eugene Brown, Appellants,
v.
STATE of Florida, Appellee.
Nos. 88-2031, 88-2099.
District Court of Appeal of Florida, First District.
May 29, 1990.
*788 Michael E. Allen, Public Defender, and Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellants.
Robert A. Butterworth, Atty. Gen., and Richard E. Doran, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Charles Smith and David Eugene Brown appeal their convictions in these consolidated cases, contending that they were denied a fair trial because the state peremptorily challenged potential black jurors for reasons that were not race neutral. We affirm.
The cases against Smith and Brown were consolidated for appeal. After the state had exercised several peremptory challenges against black venire persons, the defense counsel for Smith asked "the record show" that the number two juror was a black male and that every person the state had stricken from the panel was black except one. No objection was made by either defense counsel nor was a Neil[1] inquiry requested. Based on the statement by defense counsel, the trial judge announced that he would ask the state to explain its reasons for the challenges. The state contended no preliminary showing had been established by the defense to require the state to explain its reasons but agreed to go ahead "voluntarily." At this point in the proceedings, defense counsel had given no reason or basis for a Neil inquiry other than stating for the record that a number of black jurors were peremptorily challenged. In State v. Slappy, 522 So.2d 18 (Fla.) cert. denied 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), the supreme court said:
In Neil therefore we established the following test:
A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race.

Id. at 21. (Emphasis added.) No timely objection was made here, and no argument was made showing a likelihood that the potential jurors had been challenged solely because of their race. Slappy holds that the spirit and intent of Neil was not to obscure the issue in procedural rules governing the shifting burdens of proof but to provide broad leeway in allowing parties to make a prima facie showing that a "likelihood" of discrimination exists. As the state agreed voluntarily to proceed with the Neil inquiry, we will pass upon the *789 merits of the alleged discrimination. However, defense counsel should be aware that the Neil and Slappy procedures should be complied with in order to properly preserve the issue for appeal.
After the state gave its reasons for its peremptory challenges, defense counsel Adams, representing the defendant Brown, made no argument at all and made no effort to show that the state's peremptory challenges were racially motivated. Counsel Andux, representing the defendant Smith, made the following argument to demonstrate the likelihood that the challenges were racially motivated:
THE COURT: All right, Mr. Andux, do you have anything you wish to say?
MR. ANDUX: Just briefly, Judge, I think especially as to Clayton Bolton, basically, the state has knocked off eight of the ten used on blacks.
THE COURT: Six, they used 6 on the main panel, then one alternate.
MR. ANDUX: Yes, sir. And that was, I believe, going to be the other people that were left on, Bobby Jackson, they had people arrested in their families.
MR. BATEH: Mr. Jackson is only 40 years old. Mr. Jackson appears to be in his 50's or 60's. And the crime was 40 years ago.
THE COURT: Go ahead.
MR. ANDUX: I would also point out the lack of questions by the state as to these people, the reason they were knocked off.
And I would maintain that the lack of questions resulted in too many black people being knocked off, and the reason some of them 
MR. BATEH: Your Honor 
MR. ANDUX:  I'm not going to say wrong or right, but a couple of people did get knock off 
MR. BATEH: Your Honor 
THE COURT: Well, didn't you excuse some black jurors that, therefore, precluded them from keeping them on the jury, Mr. Andux?
MR. ANDUX: I exclude one black juror.
THE COURT: Why did you do that?
MR. ANDUX: Why did I excuse Daniels? Why did I 
.....
MR. BATEH: Your Honor, I did want to mention  106, Sands, is a black female.
And we did want to seat Ms. Daniels, 383, but that person was challenged by the defense.
THE COURT: Anybody have anything else they wish to say?
MR. ANDUX: No, sir, Judge. We just  I move the panel be stricken.

THE COURT: And we start over?
MR. ANDUX: Yes, sir.
THE COURT: You don't think you can get a fair trial with this panel?

MR. ANDUX: Judge, that's all of the argument I have.

THE COURT: Well, I don't think that I'm satisfied. The composition of this jury is sufficient for both of your clients to give both a fair trial.
Each of you have had a number of fair challenges, you used 20 (sic) apiece. And so, it's going to be difficult to have  It may be the youthfulness of some, but given the ages of your clients, and their appearance, my prospective, so therefore, it's going to be denied.
(Emphasis added.)
Counsel for Smith made only the very limited argument which is set forth in full above. He failed or refused to answer when the court asked him why he excused a black juror. He failed or refused to answer when the court asked him whether he thought he could get a fair trial with the panel, saying, "that's all of the argument I have." In respect to the argument that the state left on white jurors who had been convicted of crimes or who had a close relative who had been convicted of a crime, but struck prospective black jurors with similar records, the state gave as the reason for not striking white juror Bobby Jackson that the unspecified crime had been committed by his father more than 40 years ago when Jackson had to be a relatively young person. The black juror, Ms. Jarosa Jackson, who was excused had a son who served in Florida State Prison for murder. The white juror Jones was accepted *790 although he had pled nolo contendere to the crime of possession of less than one gram of marijuana more than 18 years before. Although his age is not given, the record indicates that Jones was probably in his early teens when charged with that crime. This is a far different situation than that of some of the other jurors that were excused. The crimes committed by them or their relatives included murder, manslaughter and an attempted robbery in which someone was killed. The state also said two prospective jurors had committed crimes which they failed to admit and the defense did not question or object to that representation. The only other reason asserted on appeal to show racial discrimination in the challenges by the state was the lack of questions which the defense contended resulted in too many black people being knocked off. All of the reasons given by the state as a basis for its challenges resulted from its questions. Both the extremes of little or no questioning and too vigorous questioning can indicate prejudice, but the questioning by the state in this case was practically the same as to all witnesses and it produced a reasonable amount of knowledge of each prospective juror's background and individual and family involvement in crime.
The trial judge who heard the jurors' answers, the arguments of counsel, and the explanation of the basis for the peremptory challenges, found that the state's challenges were not racially motivated. There is competent substantial evidence to support this finding.
It almost appears as if one of the defense attorneys in this case was playing games with the court by taking minimum, if not insufficient, action to trigger a Neil inquiry in an attempt to preserve a racial discrimination error for appeal in the event of an adverse verdict. Both the trial court and the appellate court need all the help they can get from all counsel in order to properly and fairly carry out the spirit and intent of Neil. While admitting in Slappy that the standard employed is imprecise, the Supreme Court refused to establish a brightline test for the guidance of the lower courts. The record on the jury selection in this case is very difficult to follow. In many places in the record the venire person questioned is not identified by name. No venire person is identified by race except by later reference in argument of counsel. The defendants were not identified by race, but we assume that they are black because of the arguments. Based on the statement of defense counsel and the number of challenges used by the defense, it appears that it peremptorily challenged eight white and one black potential jurors without giving any reason.
The only reasons given by defense counsel to show that the state's peremptory challenges were racially motivated were not supported by the record. The trial judge's findings were and accordingly, we AFFIRM.
JOANOS and ZEHMER, JJ., and FORD L. THOMPSON, (Ret.), Associate Judge, concur.
NOTES
[1] State v. Neil, 457 So.2d 481 (Fla. 1984).