679 So.2d 1197 (1996)
Cornell AUSTIN and Kelvin Leroy Bryant aka Jit, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 94-778, 94-1209.
District Court of Appeal of Florida, Third District.
July 31, 1996.
Rehearings Denied October 16, 1996.
McKenna & Obront and Curt Obront, Coconut Grove; Sheryl Lowenthal, Coral Gables, for appellants.
Robert A. Butterworth, Attorney General, and Richard L. Polin, Assistant Attorney General, for appellee.
Before BARKDULL, GERSTEN and GREEN, JJ.
BARKDULL, Judge.
Six co-defendants were charged, by indictment, with first degree murder, attempted first degree murder, robbery, kidnapping, burglary, arson and conspiracy to commit a felony. At the outset of the evening of these offenses, the defendants discussed plans to rob someone. The plan was for the woman in the group to pull cars over as if to have sex and the others would then come out to *1198 rob them. They made an attempt to stop a car in order to rob the occupants, but that plan did not work out because the occupants were suspicious and possibly police officers. The individuals then followed a second car into a motel parking lot, and all six approached the other car. The victims, Trevor Munnings and Bridgette Gibbs, were approached from behind and thrown to the ground. One individual took Munnings' wallet, cash and car keys and the victims were then ordered to get into the trunk of Munnings' car. Since Gibbs resisted, one of the perpetrators grabbed her, hit her head against the trunk of the car, and put her inside. The perpetrators drove around with the victims in the trunk, making several stops along the way. At one of the stops, the trunk was opened, and the victims were removed so that their hands, face and feet could be tied with tape (type not specified). Munnings attempted to crawl under the car, but was pulled back and hit over the head with a rock. Since the tape was not holding up well, the victims were placed back into the trunk while one of the perpetrators went to get duct tape. When he returned, Munnings was taken out of the trunk, taped again, and placed back into the trunk. Gibbs was then removed from the trunk, taped and sexually battered with a stick. Once again, Gibbs was returned to the trunk, and the perpetrators continued driving. At the next stop, Gibbs was removed from the trunk and thrown over a bridge. The car continued driving and about half an hour later Munnings was removed from the trunk and also thrown over a bridge into a canal. The perpetrators then proceeded to a gas station to purchase gasoline before driving to another location to pour gas on the car and ignite it with a flaming cloth. The perpetrators then fled in their car, which had been left in the vicinity, went out for breakfast using the stolen cash, and divided the remainder of the cash before heading home. In the meantime, Munnings was able to extricate himself from the duct tape and obtain assistance from a police officer. His burned car was found shortly thereafter. Gibbs' body was found the following morning, and the medical examiner testified that the cause of death was homicide by drowning. During the next several weeks, all six of the codefendants confessed to being involved in the offenses. These statements were made after Miranda warnings had been given.
Co-defendant Cobb's trial was severed, and co-defendants Glass and Nolden entered guilty pleas prior to trial and testified on behalf of the prosecution. In the case presently under review, three co-defendants, Austin, Bryant and Smith, were tried at a joint trial. The jury found the three defendants guilty as charged. Austin received six life sentences and three 30-year sentences, all to run consecutively, and Bryant received a life sentence on the murder with concurrent sentences of 15 and 20 years on the remaining counts. The life sentences for the first degree murder also carried a mandatory minimum of 25 years. Smith was sentenced to death, and as such, his direct appeal went before the Florida Supreme Court. As for Austin and Bryant, their appeals were consolidated for record and briefing purposes and the oral arguments were scheduled consecutively. The case is now consolidated for the purposes of this opinion.
Prior to the trial of the three co-defendants, the trial court heard extensive motions. Primarily, these were motions to sever the trials and motions to suppress the statements of various codefendants. These motions were denied, and again denied when renewed during trial, prior to the admission of the statements. Each of the statements made by a co-defendant had been redacted prior to trial, so that references to other co-defendants were deleted and replaced with nondescript pronouns. Additionally, the jurors were advised that they were to consider the individual codefendant's statement only as to the co-defendant giving that particular statement. The jury found all three co-defendants guilty as charged.
Austin and Bryant raise five issues on appeal, all of which we find to be without merit. First, the defendants contend that the trial court erred in refusing to grant the motions for severance. The Confrontation Clause was not violated in this instance by the admission of statements of non-testifying co-defendants with a limiting instruction, where each confession was redacted to eliminate *1199 the name of or reference to the other defendants. See Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987). Second, the defendants contend that the trial court erred in refusing to allow the defendants to bring in evidence regarding failed polygraph examinations taken by key prosecution witness Kevin Nolden. The Florida courts have long held that polygraph evidence is inadmissible absent a stipulation between the parties. See Davis v. State, 520 So.2d 572 (Fla.1988); Delap v. State, 440 So.2d 1242 (Fla.1983), cert. denied 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984); Cohen v. State, 581 So.2d 926 (Fla. 3d DCA 1991), review denied 592 So.2d 679 (Fla.1991); Carter v. State, 474 So.2d 397 (Fla. 3d DCA 1985), review denied 488 So.2d 69 (Fla.1986). The defendants' third contention is that they are entitled to a new trial based upon improper remarks or comments made by the prosecutor throughout the proceedings. We agree with the state that these comments did not result in reversible error. See § 924.33 Fla.Stat. (1995). Next, defendants argue that the trial court erred in denying the motions to suppress post-arrest statements. The determination of voluntariness is based upon the totality of the circumstances, and the situation must be viewed in the light most favorable to the prevailing party. See Traylor v. State, 596 So.2d 957 (Fla.1992); State v. Rizo, 463 So.2d 1165 (Fla. 3d DCA 1984). Accordingly, we find the statements to have been voluntarily made. Finally, the defendants argue that the trial court erred in permitting the prosecutor to exercise a peremptory challenge against an African-American juror for reasons that were not neutral, not record supported, or otherwise pretextual.
The trial court, the prosecutor and defense counsel questioned this juror regarding her employment as a guidance counselor. Defense counsel's primary concern was that this juror might have a problem weighing the mitigating circumstances while serving on a penalty phase jury. When questioned about her position on this issue, and on the death penalty in general, the juror stated that she would tend to "err on the side of life." A valid, nonpretextual reason for challenging a juror is found where the juror is questioned about a perceived bias and, based upon his or her answers, is excused. State v. Slappy, 522 So.2d 18 (Fla.1988), cert. denied 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). Here, defense counsel questioned the juror about her ability to be impartial in light of the fact that she was a guidance counselor and might therefore be more lenient. The juror indicated that she might actually be lenient. Thus, the state's reason for excusing her was not pretextual and the trial court properly dismissed her. Slappy, supra. Although we find no error in the exercise of the peremptory challenge, even if there was, the defendants failed to properly preserve the additional pretextual arguments by not raising the issues during the Neil inquiry.[1] The proper time for exacting race-neutral reasons is during voir dire, and the proper forum is the trial court, not the appellate court. Hall v. Daee, 602 So.2d 512 (Fla.1992).
Finding no merit in the claims raised by appellants, we hereby affirm the trial court's decision in its entirety.
Affirmed.
GERSTEN, J., concurs.
GREEN, Judge, concurring.
I agree that the convictions and sentences of both appellants must be affirmed. I write separately on the last issue raised on these appeals to express my disagreement with the majority's conclusion that the state's exercise of a peremptory challenge against an African-American juror was race-neutral or otherwise nonpretextual. Since, however, the defendants did not adequately preserve this issue for appellate review, I agree with the majority that their convictions and sentences must nevertheless be affirmed.
Jessica Alston was the third African-American juror against whom the state had attempted to exercise a peremptory challenge. The defendants objected and requested a Neil inquiry based upon a perceived *1200 pattern of racially motivated strikes by the state. The trial court proceeded with the inquiry and asked the prosecutor to articulate reasons for its proposed strike against Ms. Alston. In response, the state said that Ms. Alston: 1) was a guidance counselor in an elementary school and therefore a member of what the state deemed to be a "help" profession; 2) had stated she would err, if at all, on the side of life in the death penalty phase; and 3) made an unusual reference to the talk show hostess Oprah Winfrey during voir dire.[2] The problem that I have with the first reason proffered by the state is that, assuming arguendo that guidance counselors are "help" professionals who are not generally predisposed to inflicting punishment, the state asked absolutely no follow-up questions of Ms. Alston in an effort to determine whether she had such a predisposition. In the absence of a showing by the state that this particular guidance counselor shared the generalized traits attributed to the profession as a whole, this explanation by the state is immediately suspect. State v. Slappy, 522 So.2d 18, 23 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). The state's explanation is particularly suspicious in this case where Ms. Alston unequivocally stated to the court that she had no adverse feelings about the death penalty which would impair her ability to serve as a juror on this case. Moreover, the record reflects that four other venirepersons, whose occupations required them to interact with elementary school aged children, were not challenged by the prosecutor.
As to the second purported race-neutral reason proffered by the state, the record discloses that defense counsel, when explaining the uneven burden of the penalty phase of the trial to all of the prospective jurors, informed the entire panel that it was the legislature's intent that the sentencer err, if at all, on the side of life. Defense counsel then questioned Ms. Alston and eight other jurors individually about their feelings regarding the legislature's preference for "an error on the side of life." All nine of these venirepersons stated that they agreed with the legislative intent as enunciated by defense counsel. Interestingly, none of these venirepersons, except Ms. Alston, was challenged by the state on the basis of their agreement with this statement. In fact, two of such persons were ultimately seated on the jury. Clearly, where Ms. Alston's response was shared by other venirepersons who ultimately served on the jury, a peremptory strike exercised on the asserted basis of that response can only be deemed pretextual. Floyd v. State, 511 So.2d 762, 764-765 (Fla. 3d DCA 1987), rev. denied, 545 So.2d 1369 (Fla.1989); Stroud v. State, 656 So.2d 195 (Fla. 2d DCA 1995); Richardson v. State, 575 So.2d 294, 295 (Fla. 4th DCA 1991).
Finally, the record discloses and the state on appeal has candidly acknowledged that Ms. Alston never made any reference whatsoever to Oprah Winfrey during her voir dire questioning. Hence, there was absolutely no record support for the state's third proffered race-neutral reason.
It is clear then that the state's asserted reasons for exercising a peremptory challenge to strike Ms. Alston from the jury panel were pretextual and unsupported by the record. Unfortunately, and inexplicably, the defense never brought it to the court's attention that the state had accepted several other jurors in "help" occupations similar to Ms. Alston and had accepted other jurors who shared Ms. Alston's views about the penalty phase. The defense further failed to *1201 point out that there was no record support of any reference to Oprah Winfrey by Ms. Alston. Having failed to bring these matters to the trial court's attention during the Neil inquiry, the appellants may not now argue them for the first time on appeal. Floyd v. State, 569 So.2d 1225 (Fla.1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991). In Floyd, our supreme court has said:
Once the state has proffered a facially race-neutral reason, a defendant must place the court on notice that he or she contests the factual existence of the reason. Here, the error was easily correctable. Had defense counsel disputed the state's statement, the court would have been compelled to ascertain from the record if the state's assertion was true. Had the court determined that there was no factual basis for the challenge, the state's explanation no longer could have been considered a race-neutral explanation, and [the juror] could not have been peremptorily excused.
Id. at 1229-30. Thus, under these circumstances, although the state's reasons for striking Ms. Alston were pretextual, I must agree with the majority that this issue was not properly preserved for appellate review. I therefore concur that these cases must be affirmed.
NOTES
[1] In particular, the defendants did not object on the grounds that there were other similarly situated jurors that the state had not attempted to dismiss, and cannot first raise this issue on appeal.
[2] Specifically, the prosecutor responded as follows:

MR. LAESER: Several things. Obviously several things. One that is not so obvious, her line of work which involves counseling. I think that counseling in and of itself, guidance counseling that is the type of work that I would call a help profession. Certainly not the type of juror that I would consider for a penalty phase. She is substantially, my feelings about her responses that if she was going to commit an error in [sic] should be on the side of life. She can believe that of course but that certainly substantiates that she will favor one side as opposed to another on the death penalty issues. I think the only other thing that struck me much more personal than anything else, anybody who would site [sic] Oprah Winfrey for her opinion strikes me as strange and unusual. The nature of the work and prior to that in New York and that fact that she specifically said that she would err on the side of life on behalf of the defense. We would believe that she would be slightly bias [sic] towards the defense and we believe that is the basis for her excusal preamtorily [sic].