GARRETT, Judge.
Appellant filed an appeal of the trial court’s order entered in a dependency proceeding. We ordered that the appeal be treated as a petition for certiorari. However, upon further consideration we choose to treat the matter as a final appeal.
The appellant, acting pro se, claims a denial of due process in the dependency proceedings conducted by the trial court.
This case involved a lack of communication, not a lack of due process. HRS took temporary custody of T.S.M. and attempted to get appellant and his wife to agree to a plan for the child’s return. Appellant claims he did not get proper notice of the child dependency hearings. HRS moved to dismiss the appeal for lack of standing when informed by the mother that appellant is not the child’s father.
In 1986, T.S.M. was “orphaned” at the age of six after his mother and appellant were sentenced to jail for various drug trafficking convictions. The appellant’s earliest release date had been 1992, the mother might have been released this year.[1] In May of 1988, the trial court granted HRS’ petition to have T.S.M. declared a dependent child and placed in its legal custody. T.S.M. then lived with his former step-grandmother first as a dependent child and later as a foster child. Appellant had given the step-grandmother a Power of Attorney and financial assistance to care for T.S.M. An amended dependency order was entered after the statutory judicial review hearing. In November of 1988, HRS signed a Permanent Placement Plan[2] and waited for the appellant (then thought by HRS to be the child’s father) or the mother to sign. The following are excerpts from the proposed plan:
NOTICE TO PARENTS
THIS IS A VERY IMPORTANT PAPER. IT TELLS YOU WHAT YOU HAVE TO DO IN ORDER TO HAVE YOUR CHILD RETURNED....
******
II. The department has done these things to try to get the parents to work with us to write a Performance Agreement:
Department has written to parents. Parents did not understand nature of Performance Agreement. A Performance Agreement will be completed with assistance of prison officials.
[[Image here]]
III. Listed in this section are the parts of the state law that were used to place the children in foster care, the problems that the family was having, and the help offered to the family before the child was placed:
5j{ j}t >}S * * *
B. The specific problems or actions of the parents which made the department take the children) out of the home were:
Both parents are incarcerated in State Prison and there are no known blood relatives to care for child.
C. Before placement the following help was offered and/or given to the family to help change things enough so that the child could stay at home safely:
Prior to placement, parents were in prison. As ex-step-grandmother is not a blood relative, AFDC was not available.[3]
*532 IV. Permanency Planning Goal
A. The reason for writing this paper is to get to the goal checked off below: X return the children) to their parents), guardian(s), or other custodians;
B. The date we plan to reach that goal is May 30, 1989.
C. This goal was picked because: It is the goal of HRS to reunite families.
•y * * *
A. The PARENT/GUARDIAN/OTHER CUSTODIAN must do the following tasks:
1. (a) Problem:
Need to [negotiate a Performance Agreement.
(b) Task(s) and task achievement dates: Negotiate a Performance Agreement.
2. (a) Problem:
Inability to provide for [TSM],
(b) Task(s) and task achievement dates: Contact worker immediately when they are released from prison in order to establish way to care for [TSM].
* # sfc * sfc
In this box write how the task(s) above will help reach the goal of the Permanent Placement Plan.
Help prepare the family to care for [TSM] after their release from prison.
[[Image here]]
C. The FOSTER PARENT must do the following tasks:
1. (a) Problem:
Provision of basic needs.
2. (b) Task(s) and task achievement dates:
Will provide for [TSM] food, shelter and clothing.
[[Image here]]
In this box write how the task(s) above will help reach the goal of the Permanent Placement Plan.
This will enable [TSM] to be well cared for while he is in Foster Care.
D. The WORKER must do the following tasks:
1. (a) Problem:
Lack of Performance Agreement.
2. (b) Task(s) and task achievement dates:
Will contact prison to see what is available so parents may begin to learn to provide for [TSM].
* # * * * *
In this box write how the task(s) above will help reach the goal of the Permanent Placement Plan.
This will enable [TSM’s] parents to begin to work toward completion of a Performance Agreement and to work toward [TSM’s] return.
* * * }j! * *
VI. This section of the permanent placement plan is the plan for keeping the child(ren) in contact with parent(s), brothers, sisters, relatives and other people who are very important to the child(ren), while in foster care.
A. Parent(s):
May write letters to child. With two weeks notice worker will transport child to HRS Service Center. Parents will provide own transportation. Mother may telephone [TSM] once a month to talk to.him.
He # # 5k * *
VIII. Additional information and assurances:
A. The child(ren) is (are) living in a licensed Palm Beach County Foster Home, which is the most family like place available that meets the needs of the child, and is as close as possible to the home of the parent(s), guardians, or other custodian(s). This placement was selected as the best one for this child because (c)hild has previously lived with Foster Mother as she was his step-grandmother. He is very attached to her. It is a warm, loving home.
The proceedings initiated by HRS and conducted by the trial court did not prejudice appellant’s parental rights. HRS temporarily took custody of the child when his mother and appellant were jailed. The child was dependent and in need of proper care, guidance and control. HRS and the trial court acted to fulfill those needs. The *533 child’s pain of separation was eased by placing him with the family’s only known relative and providing the support to maintain the child in a “warm and loving home.” HRS sought to fulfill its statutory duty by entering into a Permanent Placement Plan for the child’s return as soon as a parent was released from prison. The trial judge sought to authorize the means to reach the common goal of reuniting parent(s) and foster child.
Appellant and his wife are now released from jail. We are confident that further contacts with HRS will convince appellant that the state was not trying to terminate his parental rights, if any. The appellant and the mother wanted the child returned, the state wanted the child returned to his parent(s). Hopefully, appellant will realize HRS only devised a plan that provided for T.S.M. while his parent(s) was (were) in prison and that HRS always wanted to permanently place the child with a parent when a parent was once again free to care for the child.
We affirm, but acknowledge that either HRS or the mother may raise the paternity issue at a future proceeding.
GLICKSTEIN, J., concurs.
WALDEN, J., dissents without opinion.

. This court in McKinnon and Scott v. State, 547 So.2d 1254 (Fla. 4th DCA 1989) (state’s discriminatory use of peremptory challenges), reversed appellant’s and the mother’s convictions and sentences. Prior to the new trials, appellant and the mother pled guilty as charged and each were sentenced to time served.

. Section 39.451(1), Florida Statutes (1987), provides that ”[t]he purpose of a performance agreement is to ensure permanency for children through recording the actions to be taken by the parties involved in order to quickly assure the safe return of the child to his parents_”
Since the parents were in prison, HRS chose to prepare a permanent placement plan which takes the place of a performance agreement and must meet all requirements provided for a performance agreement. § 39.462, Fla.Stat. (1987).

.The placement plan made the step-grandmother eligible for financial assistance as T.S.M.'s foster parent.