672 So.2d 555 (1996)
Jeffrey Bernard HAILE, Appellant,
v.
STATE of Florida, Appellee.
No. 94-03806.
District Court of Appeal of Florida, Second District.
March 20, 1996.
James Marion Moorman, Public Defender, Bartow, and Brad Permar, Assistant Public Defender, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Appellee.
FRANK, Acting Chief Judge.
Jeffrey Haile, who was convicted of first degree murder and attempted first degree murder, contends that he should be granted *556 a new trial because the court allowed an impermissible peremptory challenge to a potential juror. Because the trial court did not sufficiently examine the prosecutor's reason for the peremptory challenge, to expose whether it was racially motivated, we reverse.
During voir dire, when the prosecutor challenged the sole remaining African American member of the panel, the defense attorney objected. The prosecutor explained his challenge:
The problem I have with Ms. King is the same problem I have with Ms. Walker and the same problem I have with Mrs. Platt is, Judge, they read the Bible. Judge, I don't want people on this jury in a forgiving mood. I know from my own personal experience, people who read the Bible also believe in forgive and forget. Based on that, I don't want them and if the Court wants me to, I'll strike Mrs. Platt now, but any of these people that read the Bible, I want nothing to do with.
Without much more discussion, the prosecutor's reasoning was accepted and he was allowed to strike Ms. King. The defense attorney's objection set in motion the requirement for the conduct of an inquiry pursuant to State v. Neil, 457 So.2d 481 (Fla. 1984). The judge, however, merely accepted the state's reasonthat Ms. King reads the Bibleas nondiscriminatory.
The court erred by failing to inquire more deeply into the reasons advanced by the state for exercising a peremptory challenge aimed at Ms. King. The court should have conducted a more penetrating inquiry into what appears to be a pretextual reason; the defendant is entitled to a new trial.
In State v. Slappy, 522 So.2d 18 (Fla.1988), the Florida Supreme Court listed five nonexclusive factors that "weigh against the legitimacy of a race-neutral explanation." Of these factors, three are present in this case: "(1) the alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory examination,... and (4) the prosecutor's reason is unrelated to the facts of the case...." As in Slappy, the "utter failure" to question Ms. King about her religious beliefs and their possible effect on her ability to serve as a juror is a source of immediate suspicion. Furthermore, this court cannot conclude, without evidence related to the facts of the case, that the reading of the Bible, a practice embraced by a significant percentage of the American public, would render that portion of the population inherently partial.
We find this case strikingly similar to Hicks v. State, 591 So.2d 662 (Fla. 4th DCA 1991), in which the prosecutor challenged an elementary school music teacher who was married to a high school band director on the ground that musicians "have more frequenting in and of themselves of occupations with illegal drugs, alcohol, substance abuse in general than other members of the population." 591 So.2d at 662. Without further inquiry into the challenged juror's political beliefs or ability to serve as a juror, such an apparently race-neutral reason must be deemed pretextual. See also Stroud v. State, 656 So.2d 195 (Fla. 2d DCA 1995) (state failed to show that peremptory challenge to prospective African American juror was not pretextual when she was rejected because the prosecutor did not like her brief answer to what she thought of the criminal justice system and no further inquiry was held); Stroder v. State, 622 So.2d 585 (Fla. 1st DCA 1993) (peremptory challenge of elementary school teacher of emotionally disturbed students, on the ground that such groups are in a "helping" rather than a punishing mode, was pretextual in absence of any questioning of prospective juror about alleged trait); Gibson v. State, 603 So.2d 711 (Fla. 4th DCA 1992) (challenge on ground that African American fruit picker would feel animosity toward the victims, Haitian fruit pickers, was held pretextual where no questions were posed of prospective juror on that subject).
The state has urged us to affirm this case on the authority of Purkett v. Elem, ___ U.S. ___, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The prosecutor in Elem rejected two prospective African American jurors on the basis that they had long hair and beards, which "looked suspicious" to the prosecutor. This reason, according to the Court, was race neutral and nondiscriminatory, for a "`legitimate *557 reason'" is not a reason that makes sense, but a reason that does not deny equal protection." ___ U.S. at ___, 115 S.Ct. at 1771. Once the prosecutor provided a race-neutral explanation for the peremptory challenge, it was then the opponent's burden to prove purposeful racial discrimination. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious." Elem, ___ U.S. at ___, 115 S.Ct. at 1771. Thus, Elem requires the further inquiry that we are demanding in this case.
To the extent that the effect of Elem might provide wider avenues of exclusion from jury duty based upon bias or prejudice toward protected groups, we are mindful of the philosophy of the Slappy court:
In interpreting our own Constitution, this Court in ... Neil .. recognized a protection against improper bias in the selection of juries that preceded, foreshadowed and exceeds the current federal guarantees. We today reaffirm this state's continuing commitment to a vigorously impartial system of selecting jurors based on the Florida Constitution's explicit guarantee of an impartial trial. See Art. I, § 16, Fla. Const.
522 So.2d at 20-1.
Accordingly, for the foregoing reasons we reverse Haile's convictions and remand for a new trial.
FULMER, J., concurs.
PARKER, J., dissents with opinion.
PARKER, Judge, dissenting.
I respectfully dissent. This group of prospective jurors contained two individuals who were black. One was excused because of his knowledge of the case. The other was Ms. King. Following the trial court's and both attorneys' voir dire examination of a group of prospective jurors, the prosecutor made it clear that he was challenging Ms. King and subsequently would challenge two others who were not black because he felt "strongly that religious people are not good jurors." These three prospective jurors were the only three who stated during questioning that they read the Bible daily. The trial court found nothing in the prosecutor's explanation that indicated racial discrimination, and I would not reverse this case because I believe that the trial court did not abuse its discretion.
This court's standard of review is abuse of discretion. See Files v. State, 613 So.2d 1301 (Fla.1992). In Files, the supreme court stated:
In Reed v. State, 560 So.2d 203, 206 (Fla.), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990), we stated:
Within the limitations imposed by State v. Neil, the trial judge necessarily is vested with broad discretion in determining whether peremptory challenges are racially intended. Only one who is present at the trial can discern the nuances of the spoken word and the demeanor of those involved....
... In trying to achieve the delicate balance between eliminating racial prejudice and the right to exercise peremptory challenges, we must necessarily rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a "feel" for what is going on in the jury selection process.
(Citation omitted; emphasis added.) This Court has consistently applied this standard of review in evaluating the State's explanations after the trial court has determined that a Neil inquiry was required. See Happ v. State, 596 So.2d 991 (Fla. 1992); Dougan v. State, 595 So.2d 1 (Fla. 1992); Green v. State, 583 So.2d 647 (Fla. 1991), cert. denied, 502 U.S. 1102, 112 S.Ct. 1191, 117 L.Ed.2d 432 (1992). We recently reaffirmed that position in Fotopoulos v. State, 608 So.2d 784 (Fla.1992), in which we stated:
Although broad leeway should be granted a defendant attempting to make a prima facie showing that a likelihood of *558 discrimination exists, a trial court is vested with broad discretion in determining whether peremptory challenges are racially motivated.

Id., at 788 (citation omitted; emphasis added).
Files, 613 So.2d at 1303 (footnote omitted).
The Files court also stated:
As stated in Reed, we must rely on the superior vantage point of the trial judge, who is present, can consider the demeanor of those involved, and can get a feel for what is going on in the jury selection process. It is difficult, if not impossible, to establish a strict rule of law in this sensitive area and still "achieve the delicate balance between eliminating racial prejudice and the right to exercise peremptory challenges." Reed, 560 So.2d at 206. The responsibility to apply these principles properly and eliminate racial prejudice in our jury selection process rests largely on our trial judges. Substituting an appellate court's judgment for that of the trial judge on the basis of a cold record is not a solution because it would provide an automatic appeal in every case where a prospective minority juror was challenged.
Files, 613 So.2d at 1305 (footnote omitted).
I disagree with the majority opinion's reliance on the second of the five nonexclusive factors listed in State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). That factor, in its entirety, states: "(2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror." In this case, the trial court and both the prosecutor and defense attorneys questioned forty-eight prospective jurors, including Ms. King. It seems to me that this factor does not apply in this case. Further, the supreme court has recognized that the five factors listed in Slappy were not intended to be absolute.
The court stated:
We qualified those factors by stating that they "will tend to show that the state's reasons are not actually supported by the record or are an impermissible pretext." Slappy, 522 So.2d at 22 (emphasis added). These factors were intended to be taken into account with other factors to determine whether a non-neutral or pretextual reason had been given.
Files, 613 So.2d at 1304.
I further believe that one of the Slappy factors that supports an affirmance in this case is the last factor, which states: "[A] challenge based on reasons equally applicable to juror[s] who were not challenged." Slappy, 522 So.2d at 22. That factor clearly does not apply in this case. Here, the prosecutor stated that he intended to strike all religious people from the jury, and, in fact, he did use peremptory challenges to strike the other two people who read the Bible daily. Thus, the reason was applicable equally to all prospective jurors and was not pretextual.
As a judge, I might conclude that this prosecutor's reason for striking Bible-reading jurors was ill-advised, shallow, absurd, or immature. I, however, conclude that it was race-neutral. Bible-reading has nothing to do with race.
Lastly, I do not understand the opinion of the majority when it states, "The court should have conducted a more penetrating inquiry into what appears to be a pretextual reason...." I assume that means that the court should have questioned the prosecutor in depth on why he felt religious people do not make good jurors on criminal cases. That, in my opinion, would not accomplish anything. The prosecutor stated his reason, and it applied to prospective jurors who were black and ones who were not. Some attorneys strike engineers, generalizing that they are too mechanical or accountants, perceiving that they are too precise. Likewise, this prosecutor struck Bible-reading persons who he believed were too religious to make good jurors in criminal cases. The fact still remains that the reason for the challenge was race-neutral. I would not second-guess the trial judge who accepted the prosecutor's explanation for excusing Ms. King as race-neutral and nonpretextual.