921 So.2d 864 (2006)
Eric CREWS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-2526.
District Court of Appeal of Florida, Fourth District.
March 8, 2006.
*865 Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Monique E. L'Italien, Assistant Attorney General, West Palm Beach, for appellee.
MARX, KRISTA, Associate Judge.
The defendant was convicted of trafficking in cocaine, possession of cannabis, fleeing a police officer, and possession of drug paraphernalia. Defendant appeals his judgment of conviction and sentence. He raises three grounds on appeal, but only one ground, which challenges the court's allowance of a peremptory strike of a minority potential juror absent a race-neutral reason for the strike, merits discussion.
During voir dire, upon questioning of prospective jurors, a particular juror indicated that she would not be able to follow the law that makes possession of one gram of marijuana illegal. When the prosecutor queried the rest of the panel as to whether anybody else thought that narcotic laws were "just wrong," no verbal response was garnered from any other juror.
The prosecutor then asked the prospective jurors whether any of them would ignore the law. A prospective African-American juror responded:
Well, I think there are certain laws that are immoral. We do have immoral laws. Maybe in the past they have been changed, some of them, but some of the laws I would have for example, if I was living in this country during the slavery time and the law was make it, I would have broke the law, anytime I would have done it.
The juror was asked no further questions by either the state or defense. During jury selection, the state moved to strike this juror peremptorily. When challenged by the defense, the state, before giving its reason for striking the juror, pointed out that it had accepted a black member of the venire and then offered the following reason for the strike:

*866 When I asked himquestioning about following the law, he indicated that his opinion and bias in the criminal justice system is that he believes there are immoral laws and he would ignore the law and instructions on the law if he found it to be an immoral law.
He was nodding his headI watched his movements as Ms. Clasky was talking about ignoring the law when it came down to 1 gram of marijuana or whether that should matter at all.
I'm simply uncomfortable sending him back with his opinions.
After hearing significant argument from both sides, the court ultimately found the prosecutor's reason to be race-neutral and genuine. The defendant argues that the prosecutor's exercise of a strike against an African-American juror on the basis that the juror stated that he would not follow immoral laws "like slavery" should have been prohibited as the reason was not race-neutral. Secondly, the defendant argues that the explanation was not genuine.
In State v. Neil, 457 So.2d 481 (Fla. 1984), the Florida Supreme Court held that a jury in Florida must be selected based on the characteristics of the individual, not on race. Any objection to potentially racially-motivated jury challenges will trigger the requirement that the trial judge critically examine the reasons for the exercise of those challenges, barring specific circumstances in the record that eliminate all question of discrimination. Valentine v. State, 616 So.2d 971 (Fla. 1993).
In Melbourne v. State, 679 So.2d 759 (Fla.1996), the Florida Supreme Court enunciated a three-step process where peremptory challenges against a member of a suspect class are exercised: (1) once a proper objection to the challenge has been made, the trial court must ask the proponent of the challenge to explain his reason for making the strike; (2) the burden of production then shifts to the proponent to come forward with a race-neutral reason; (3) if the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained. The court's focus in the third step "is not the reasonableness of the explanation but rather its genuineness." 679 So.2d at 764.
Step 1 of Melbourne is typically not contested except on procedural grounds related to preservation. As for Step 2, it should be noted that it "does not demand an explanation that is persuasive, or even plausible." Purkett v. Elem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). In fact, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Id. at 768, 115 S.Ct. 1769. There are several cases which have been reversed where there was no finding of race-neutrality in the proffered explanation. Despio v. State, 895 So.2d 1124 (Fla. 3d DCA 2005) (striking a prospective juror because he speaks Creole and may have sympathy for the defendant's witnesses is not a race-neutral reason); Frazier v. State, 899 So.2d 1169 (Fla. 4th DCA 2005) (striking a juror from Jamaica because she was from a country with a high level of drug trafficking is not a race-neutral reason); Baber v. State, 776 So.2d 309 (Fla. 4th DCA 2000) (prosecutor's statement that he struck an African-American juror because the crime was a "black on black" offense is an admission to striking on racial grounds).
Certainly, no reasonable person today would argue that the laws permitting slaverya race-based institution in this country's historywere not immoral. However, *867 the comment here is distinguishable from those comments made in cases reversed for lack of racial neutrality. When the juror's comment is put into context, it is apparent that the reason for exercising the peremptory challenge was the juror's philosophy regarding following the law rather than the race-specific reason of slavery. Slavery laws were but one example of a law the juror found immoral and would not follow.
The trial court judge is vested with broad discretion in determining whether peremptory challenges are racially motivated and peremptory challenges are presumed to be exercised in a nondiscriminatory manner. Cobb v. State, 825 So.2d 1080, 1080-1086 (Fla. 4th DCA 2002); Reed v. State, 560 So.2d 203 (Fla.1990).
However, simply because Step 2 is satisfied does not mean that Step 3 will be established. Melbourne lists factors to be considered when analyzing a peremptory challenge under Step 3:
Relevant circumstances may includebut are not limited to the following: the racial make-up of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment.
679 So.2d at 764 n. 8. In undertaking this analysis, a court must keep in mind that "[t]he striking of even one African American member of a venire for racial reasons is a constitutional violation." Baber, 776 So.2d at 310. The court considered as one factor in determining the genuineness of the prosecutor's explanation the fact that another African-American was seated as a juror. This is proper consideration when determining whether a strike was exercised in a discriminatory manner. Heggan v. State, 745 So.2d 1066 (Fla. 3d DCA 1999).
Under Step 3, the trial court must also employ the factors set forth in Melbourne's predecessor case, State v. Slappy, 522 So.2d 18 (Fla.1988). Young v. State, 744 So.2d 1077, 1082 (Fla. 4th DCA 1999). The Slappy factors are:
The presence of one or more of these factors will tend to show that the state's reasons are not actually supported by the record or are an impermissible pretext: (1) alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a challenge based on reasons equally applicable to jurors who were not challenged.
522 So.2d at 22. When considering these factors, it should be noted that the juror in this case who claimed she could not follow the law illegalizing one gram of marijuana was stricken for cause. The courts have consistently held that if there is any reasonable doubt about a juror's ability to follow the law, the court should grant a challenge for cause. Garcia v. State, 805 So.2d 827 (Fla. 2d DCA 2001); Kerestesy v. State, 760 So.2d 989 (Fla. 2d DCA 2000); Plasir v. State, 785 So.2d 502 (Fla. 3d DCA 1999); Brown v. State, 728 So.2d 758 (Fla. 3d DCA 1999).
The only possible relevant Slappy factor is whether there was failure to examine the juror or a perfunctory examination of the juror. While it would have been preferable to have further examination of the juror regarding what other laws he would not follow, this does not demonstrate the kind of perfunctory questioning which indicates that the proffered explanation for the *868 peremptory challenge is pretextual. Defendant points to several cases for the argument that the prosecutor's questioning of a juror was "perfunctory." However, these cases are inapplicable as they reveal the reasons for the strike as far less than a subjective refusal to follow the law. Haile v. State, 672 So.2d 555 (Fla. 2d DCA 1996) (permitting excusal of minority juror because she read the Bible was reversible error in light of failure to question her about religious beliefs; otherwise "significant percentage of American public" would be ineligible to serve); Hicks v. State, 591 So.2d 662 (Fla. 4th DCA 1991) (no follow-up questioning of juror who was a musician); Mayes v. State, 550 So.2d 496 (Fla. 4th DCA 1989) (lack of questioning of juror about effect of her employment on her ability to serve rendered suspect reason for challenge, "that juror was nurse," especially where another juror employed as lab technologist was unchallenged).
When examined in a vacuum the example of an immoral law given by the juror cannot be deemed race-neutral. However, when taken in context, it is clear that the juror indicated that he may not follow a particular law if he did not find it moral. The state demonstrated this through its explanation. The prosecutor believed that if the juror found a law objectionable or immoral he may just ignore the law. The juror expressed his subjective belief in application of the law and simply used slavery as an example. The court found this explanation race-neutral and genuine. Nothing convinces us otherwise.
Therefore, we affirm the judgment and conviction.
STEVENSON, C.J., and FARMER, J., concurs.