956 So.2d 497 (2007)
Duane GLINTON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-132.
District Court of Appeal of Florida, Fourth District.
April 18, 2007.
*499 Carey Haughwout, Public Defender, and Elisabeth Porter, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
Glinton appeals his conviction for grand theft. He contends that the trial court erred in allowing peremptory challenges to two black venire members because the state failed to provide race-neutral reasons for the challenges. We affirm.
Voir dire was extensive, partially because of the comments of one member of the pool, prospective juror Smith. While a number of prospective jurors, or their family members, had committed crimes, or had themselves been victims or had family who had been victims, only Mr. Smith made the statement that "police officers are trained to lie."
Although attempts to rehabilitate Mr. Smith resulted in his acknowledging that not all police officers would lie on the stand, this was not his only comment of concern to the state. He injected his personal opinions at length. At different times, his rambling became an issue for both attorneys and the trial court.
Prospective juror Stewart was not as vocal; however, Mr. Stewart also made comments raising concern.
JUROR MR. STEWART: I mean, you know, truthfully, I don't like the law, but you know, I have to go by it.
MR. WEISSMAN (for the state): Okay. When you say  You talking about my circumstances? Or do you 
JUROR MR. STEWART: No. I'm talking about my circumstances.
MR. WEISSMAN: In general you don't like the law?
JUROR MR. STEWART: (No verbal response.)
MR. WEISSMAN: Can I ask what part of the law? What  What law you don't like or what part?
JUROR MR. STEWART: Well, when it comes to law, they will always harass me.
MR. WEISSMAN: Okay.
JUROR MR. STEWART: When it comes to police department and 
MR. WEISSMAN: Okay.
JUROR MR. STEWART:  stuff like that. I mean, I've never been arrested and, you know, never committed a crime. But, you know it seems that all the time, you know, I am the target for 
MR. WEISSMAN: For the police.
JUROR MR. STEWART: Harassment.
MR. WEISSMAN: Okay.
JUROR MR. STEWART: Profiling.
MR. WEISSMAN: All right. I  I understand what you're saying.
A short time later, the following exchange occurred:

*500 JUROR MR. SMITH: Like, what I'm saying, I  could make a fair judgment, sir 
MR. WEISSMAN: Okay.
JUROR MR. SMITH:  is what I'm saying. Although you're the prosecutor and  that's your crew. You know the police is your crew.
The state moved to strike Mr. Smith peremptorily. Following objection, the trial court conducted the requisite Neil/Slappy[1] inquiry and upheld the peremptory challenge because Mr. Smith was "strident in his views" and because he stated that officers were trained to lie. Likewise, the state moved to strike Stewart on grounds that he said he was always harassed and treated differently by both police and doctors. Again, the trial court conducted the required inquiry and upheld the peremptory challenge, recognizing that Mr. Stewart was "in a much different category" than Mr. Smith, but that the state had also identified a race-neutral reason  the man's persecution feelings, albeit feelings that flowed from his personal experience.
Prior to swearing in the panel, the trial court asked if the panel was acceptable to both sides. The state answered "Yes, sir;" the defense responded, "That panel's acceptable." Next, the trial court inquired of Glinton whether he was satisfied with the panel and with his attorney's services and explanations through that point in the proceedings. After brief conversation, Glinton also answered that he was satisfied. Glinton's attorney did not object to the panel prior to the jurors being sworn.
Initially, we conclude that Glinton failed to properly preserve this issue for review. Joiner v. State, 618 So.2d 174, 176 (Fla.1993) (it is necessary to renew an objection to a juror prior to the panel being sworn); see also Carratelli v. State, 915 So.2d 1256, 1262 (Fla. 4th DCA 2005); Berry v. State, 792 So.2d 611 (Fla. 4th DCA 2001); Wilkins v. State, 659 So.2d 1273 (Fla. 4th DCA 1995).
We recognize that it is possible to accept a juror, or panel, subject to an earlier objection. Mitchell v. State, 620 So.2d 1008, 1009 (Fla.1993); see also Nieves v. State, 739 So.2d 125, 127 (Fla. 5th DCA 1999). However, this is not what occurred here. We reject Glinton's argument that his dialog with the trial court served as an objection. First, the trial court was asking about Glinton's overall satisfaction with the proceedings. The trial court used the word "objection," not Glinton. And, Glinton's response was that he was satisfied, both with the panel and with his attorney.
In any event, we find no abuse of discretion in allowing the challenges to stand. "[T]he appropriate standard for appellate review for determining the threshold question of whether there is a likelihood of racial discrimination in the use of peremptory challenges is the abuse of discretion standard." Files v. State, 613 So.2d 1301, 1304 (Fla.1992). Courts must employ a three-step process where peremptory challenges are exercised against a suspect class. Melbourne v. State, 679 So.2d 759 (Fla.1996).
(1) once a proper objection to the challenge has been made, the trial court must ask the proponent of the challenge to explain his reason for making the strike; (2) the burden of production then shifts to the proponent to come forward with a race-neutral reason; (3) if the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, *501 the explanation is not a pretext, the strike will be sustained.
Crews v. State, 921 So.2d 864, 866 (Fla. 4th DCA 2006). The third step focuses on the genuineness of the explanation, as opposed to its reasonableness. Melbourne, 679 So.2d at 764. This process incorporates the Neil inquiry and the Slappy factors, to wit: (1) alleged group bias not shown to be shared by the juror in question; (2) either failure to examine or perfunctory examination of the juror; (3) singling out the juror for special questioning designed to evoke a particular response; (4) the prosecutor's offered reason is unrelated to the facts of the case; and (5) challenge based on reasons equally applicable to other seated jurors. Slappy, 522 So.2d at 22.
Glinton contends that the third, fourth, and fifth factors apply to his case. We emphasize that Mr. Smith was not singled out by the state. He singled himself out by volunteering an excess of opinions. It became necessary to question him further in order to figure out where he was going with some of his statements. Whether police officers are trained to lie was central to this case since so much of the witness testimony was from police officers. And, no other juror made a similar statement or behaved in a similar fashion, although Mr. Stewart expressed agreement. The offered reasons for a strike "must be weighed in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record." Id.
As applied to Mr. Stewart, the factors also fall short. Mr. Stewart had the floor far less than Mr. Smith; he was not singled out, nor were his questions any different from those asked of all other venire members. Mr. Stewart's comments amounted to a belief that he had suffered from racial profiling. Furthermore, Mr. Stewart's perception of his mistreatment because of his race ran deep and, despite attempts to rehabilitate, he kept coming back to the same theme.
Mr. Stewart's opinions and feelings were the direct result of his experience as a black man. However, the state was not asking to strike him because of his race, but because of his statements. Although not directly analogous, the facts in Crews are somewhat similar to those at bar. A prospective black juror responded that he felt some laws were immoral. 921 So.2d at 865. The defendant in that case claimed error in the trial court's allowance of a peremptory strike of the juror without a race-neutral explanation. Id. Our court said, "[w]hen examined in a vacuum the example of an immoral law given by the juror cannot be deemed race-neutral. However, when taken in context, it is clear that the juror indicated he may not follow a particular law if he did not find it moral. The state demonstrated this through its explanation." Id. at 868.
We have considered the holding in Turnbull v. State, 31 Fla. L. Weekly D2728, ___ So.2d ___, 2006 WL 3078754 (Fla. 3d DCA Nov.1, 2006), and distinguish it because in that case, the prosecutor initiated the subject of racial profiling, while in the instant case, the stricken juror raised the issue on his own initiative several times.
As reasonable minds could view the state's reasons with regard to both jurors as race-neutral, we affirm.
We also find no reversible error or abuse of discretion in the trial court's admission of evidence of marijuana present at the time of arrest.
Affirmed.
SHAHOOD and HAZOURI, JJ., concur.
NOTES
[1] State v. Neil, 457 So.2d 481 (Fla.1984); State v. Slappy, 522 So.2d 18 (Fla.1988).