576 So.2d 1300 (1991)
Patrick Anthony REYNOLDS, Petitioner,
v.
STATE of Florida, Respondent.
No. 75680.
Supreme Court of Florida.
January 31, 1991.
Rehearing Denied April 16, 1991.
Nancy Daniels, Public Defender and Kathleen Stover, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen. and Edward C. Hill, Jr., Asst. Atty. Gen., Tallahassee, for respondent.
KOGAN, Justice.
We have for review Reynolds v. State, 555 So.2d 918 (Fla. 1st DCA 1990), based on express and direct conflict with Parrish v. State, 540 So.2d 870 (Fla. 3d DCA), review denied, 549 So.2d 1014 (Fla. 1989), and Pearson v. State, 514 So.2d 374 (Fla. 2d DCA 1987), review dismissed, 525 So.2d 881 (Fla. 1988). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The relevant fact of the present case is that the sole black venire member available for service on Reynolds' jury was peremptorily stricken by the state. Reynolds also was black. The defense objected under the doctrine of State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986), and clarified, State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), and argued that the black venire member's answers during voir dire disclosed no valid reason for exclusion. The prosecutor countered only that there had been no "systematic exclusion" of *1301 blacks. The trial court agreed and declined to order the state to explain why it had stricken the only black. Reynolds, 555 So.2d at 918.
On appeal, the First District found that the defense had failed to satisfy Neil's requirement of demonstrating a "strong likelihood" that the black venire member had been stricken because of race. However, the court acknowledged the contrary holdings of Pearson and Parrish. Id. at 919.
In Slappy, 522 So.2d at 20, we stated that
the appearance of discrimination in court procedure is especially reprehensible, since it is the complete antithesis of the court's reason for being  to insure equality of treatment and evenhanded justice. Moreover, by giving official sanction to irrational prejudice, courtroom bias only enflames bigotry in the society at large.
We then acknowledged what is self-evident  that the peremptory challenge is "uniquely suited to masking discriminatory motives." Id.
In Slappy's companion case, Blackshear v. State, 521 So.2d 1083 (Fla. 1988), we confronted a situation in which the prosecutor peremptorily excused all eight members of a minority. There, we stated that excusal of all the minority members was sufficient to shift the burden of proof to the state once the defense had made its objection under Neil.
Applying similar reasoning, the Second District has relied on federal law to conclude that
[w]e see no difference, in terms of the equal protection clause, between the striking of the only one black juror and the striking of the only two black jurors  or the striking of the only three black jurors, or more.
Pearson, 514 So.2d at 376. The Third District in Parrish, 540 So.2d at 871, has relied on the state-law principles announced in Neil and Slappy to reach the same conclusion.
We must agree as a matter of Florida law with the general rationale of the Pearson and Parrish courts. As noted in Slappy, the peremptory challenge is uniquely suited as a tool to mask true motives; and this mask becomes especially opaque when a peremptory strike eliminates the only minority venire member available for jury service. No pattern can be shown because there was no possibility of a pattern ever occurring. If the presence of only one minority member on the panel excuses the state from giving even the most rudimentary of reasons, then an improper excusal cannot be detected or remedied. In this way, the public justifiably might distrust the use of peremptories and the fairness of the jury selection process.
This is contrary to the spirit of Florida law, which clearly holds that even one improper excusal is sufficient to trigger the requirements of article I, section 16 of the Florida Constitution. Slappy, 522 So.2d at 21, 23. It would be absurd to say that, while this is what the Florida Constitution requires, there is no way of remedying an improper excusal if it happens to eliminate the sole minority venire member available. We thus believe that the question in this case, as in Blackshear, is whether the peremptory is used to eliminate all members of the minority. The fact that only one member of the minority was available for jury service is irrelevant. By eliminating every member of the minority, a "strong likelihood" is created that shifts the burden to the state to provide justification, once the defense has made its Neil objection.
The burden imposed on the state by this requirement is, at worst, minimal. It will entail no more than a minute or two of time. All that is required is for the trial court to ask the state why it has peremptorily excused the only minority member. All the state must do is give reasons that show a valid, nondiscriminatory purpose for the excusal under the standards announced in Slappy, 522 So.2d at 22. These reasons then will be evaluated by the trial judge, whose determination of the matter is given deference on appeal. Reed v. State, 560 So.2d 203, 206 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990). The slight inconvenience *1302 of this procedure clearly and unmistakably is justified as a means of preventing the injustice that would result if the only minority venire member could be peremptorily excused without accountability.
We caution, however, that there are some conceivable instances in which the state would be justified in excusing all minority members of the venire, whether their number is one or more. Slappy teaches that such excusals will be proper where the reasons given by counsel during the Neil inquiry are neutral, reasonable, and not a pretext. Slappy, 522 So.2d at 22. These qualities will be judged using a nonexclusive list of factors elaborated in Slappy. Id. Accordingly, we do not imply by our opinion today that it is always error to peremptorily excuse every minority venire member, only that it is error to do so where the excusal cannot be, or is not, justified by neutral, reasonable, and nonpretextual reasons. Here, error occurred precisely because the minority venire member's answers suggest no valid reason for excusal and the trial court then failed to require the state to explain its actions.
In no sense do we suggest by this opinion or by our opinion in Slappy that the prosecutors of this state are influenced by racist sentiment in the present-day courtrooms of Florida. We have the utmost confidence in the integrity and skill of the Attorney General, the twenty state attorneys, and their staffs. The quality of their advocacy is before this Court every day in the form of a typically superior work product.
Rather, our opinion today stands foursquare on the principle of accountability, which is the bedrock of American democracy. Our system of government is premised on the belief that every public officer and employee should be accountable and should not lie entirely beyond the reach of public questioning. Both the federal and Florida Constitutions provide a right to petition officials for redress of grievances partly to ensure that such accountability exists.
Ordering the state to justify its use of the peremptory challenge in no sense impugns the state or suggests an accusation of racism. Its sole purpose is to apply the principle of accountability to the peremptory challenge. As both Neil and Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), have recognized, some abuses have occurred in the past, resulting in the unconstitutional use of the peremptory challenge. These past abuses have created an appearance of impropriety, however unfounded today, that must be eliminated. Our opinions in Neil, Slappy, and the present case eradicate this appearance of impropriety by creating a simple, brief, and easily enforced system of accountability in this very limited context.
Finally, the state correctly calls to our attention the fact that our recent opinion in Reed vests significant discretion in the trial court on Neil issues by requiring appellate courts to show deference to the trial court's conclusions. Specifically, Reed states that appellate courts must "rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a `feel' for what is going on in the jury selection process." Reed, 560 So.2d at 206. However, Reed rested on the assumption that, in the context of that case, some sort of Neil inquiry must have been made in the first instance. Here, there was none at all. Deference cannot be shown to a conclusion that was never made.
For the foregoing reasons, the trial court erred in not asking the state to account for its peremptory strike of the only minority venire member. The act of eliminating all minority venire members, even if their number totals only one, shifts the burden to the state to justify the excusal upon a proper defense motion. Blackshear. If the peremptory challenge is to remain a part of our trial system, there must be accountability for its use in every proceeding. The public, whether members of a minority or not, are entitled to assurances that our courts are acting to eliminate past abuses. This requires a system of accountability, which in turn necessitates that the discretion to use the peremptory challenge never be unbridled.
We quash the opinion below and remand for further proceedings consistent with the *1303 views expressed here. The opinion in Parrish is approved. We approve the result reached by Pearson but disagree with its tacit assumption that Neil provides less protection than the federal law expounded in Batson. See Slappy, 522 So.2d at 21 (Neil exceeds the current federal guarantees).
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and GRIMES, JJ., concur.