602 So.2d 512 (1992)
Ebony HALL, etc., et al., Petitioners/Cross-Respondents,
v.
Hosain DAEE, etc., et al., Respondents/Cross-Petitioners.
No. 77127.
Supreme Court of Florida.
May 14, 1992.
Rehearing Denied July 15, 1992.
*513 Stanley M. Rosenblatt and Susan Rosenblatt, Stanley M. Rosenblatt, P.A., Miami, for petitioners, cross-respondents.
Debra J. Snow and Robert M. Klein, Stephens, Lynn, Klein & McNicholas, P.A., Steven E. Stark and Michael L. Friedman, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Betsy Gallagher, Kubicki, Bradley, Draper, Gallagher & McGrane, P.A., and Joe N. Unger, Law Offices of Joe N. Unger, P.A., Miami, for respondents, cross-petitioners.
Roy D. Wasson, Miami, amicus curiae, for Academy of Florida Trial Lawyers.
Jesse McCrary and H.T. Smith, Miami, amicus curiae, for Florida Chapter of Nat. Bar Ass'n.
BARKETT, Justice.
We review Hall ex rel. Hall v. Daee, 570 So.2d 296, 300 (Fla. 3d DCA 1990), in which the district court certified the following to be a question of great public importance:[1]
WHETHER, AS A MATTER OF LAW, A NEIL INQUIRY MUST BE CONDUCTED BY THE TRIAL COURT, EVEN THOUGH THE TRIAL COURT FOUND THERE HAD BEEN NO CHALLENGE OF JURORS ON A RACIALLY DISCRIMINATORY BASIS, WHERE THE DEFENDANTS EXERCISED PEREMPTORY CHALLENGES ON FOUR OUT OF FIVE BLACK PROSPECTIVE JURORS?
To the extent that the question asks whether a trial court must conduct a Neil[2] inquiry whenever a party exercises four out of five peremptory challenges to strike prospective black jurors, we answer the certified question in the negative. There is no "per se" number of challenges that would automatically trigger a Neil inquiry. However, where a party challenges four out of five prospective black jurors and nothing in the record adequately explains the challenges, the trial court should not refuse to conduct a Neil inquiry where one was requested upon appropriate objection.
James and Emily Hall brought suit against Dr. Hosain Daee, Dr. Raul Hernandez, and James Archer Smith Hospital (defendants) for malpractice resulting from injuries sustained by their daughter, Ebony Hall, at birth. During voir dire, the trial court allowed the three defendants to pool their peremptory challenges. Of the thirtyfive venire members, six were black; five of those six were reached in voir dire. Four of those five were peremptorily challenged by the defendants; one served on the jury. Dr. Hernandez and the hospital each struck one potential black juror, and Dr. Daee struck two. When the plaintiffs objected to the defense counsels' strikes, the court determined that there was no need to inquire as to the reasons for the strikes. The district court affirmed.
In State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986), this Court first established the guidelines necessary for guarding against the racially discriminatory use of peremptory challenges. The procedure requires a party to "make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged *514 solely because of their race." 457 So.2d at 486 (footnote omitted). If the court determines that this initial burden has been met, "the burden shifts to the complained-about party to show that the questioned challenges were not exercised solely because of the prospective jurors' race." Id. at 486-87. The issue in this case is whether that "strong likelihood" exists under the circumstances presented here.
In Neil this Court stated:
[T]he exclusion of a number of blacks by itself is insufficient to trigger an inquiry into a party's use of peremptories. It may well be that the challenges were properly exercised but that that fact would not be apparent to someone not in attendance at the trial. The propriety of the challenge, however, might be readily apparent to the judge presiding over the voir dire. We emphasize that the trial court's decision as to whether or not an inquiry is needed is largely a matter of discretion.
Id. at 487 n. 10. Since Neil, we have often reiterated that the determination of whether the challenger has established a prima facie case rests within the trial court's discretion. See, e.g., Wright v. State, 586 So.2d 1024, 1027-28 (Fla. 1991); Reed v. State, 560 So.2d 203, 206 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990). Indeed, in State v. Slappy, 522 So.2d 18, 21-22 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), we specifically declined to "craft a brightline test," finding that
[s]uch a rule could cause more havoc than the imprecise standard we employ today, since racial discrimination itself is not confined to any specific number of forms or effects. Instead, we affirm that the spirit and intent of Neil was not to obscure the issue in procedural rules governing the shifting burdens of proof, but to provide broad leeway in allowing parties to make a prima facie showing that a "likelihood" of discrimination exists.
Thus, the jury selection process must be evaluated as a whole, and the number of challenges is simply one factor to be considered.
At the same time, however, our language cannot be read to suggest that judges should ignore the logical implication created by the exclusion of four out of five prospective black jurors in assessing the likelihood of discrimination in the exercise of a party's peremptory challenges. In the very least, on its face, such a ratio of exclusion is highly suggestive of a racial motive, and as we have firmly established, "any doubt as to whether the complaining party has met its initial burden should be resolved in that party's favor." Slappy, 522 So.2d at 22. Unless the inference of discrimination is easily dissipated by other relevant facts noted on the record by the trial court, such as assertions by the venire members that they would lack impartiality, or responses and behavior observed during questioning of those venire members indicating that they would be unsuitable jurors, the trial court abuses its discretion in refusing to conduct an inquiry into the reasons for those exclusions. See Reynolds v. State, 576 So.2d 1300, 1302 (Fla. 1991); Thompson v. State, 548 So.2d 198, 202 (Fla. 1989).
In this case, the record does not contain facts which on their face legitimately dispel the inference of discrimination created by striking four out of five prospective black jurors. We recognize that this trial occurred prior to our opinions in Slappy, Thompson, and Reynolds. Thus, the judge did not have the benefit of those cases when he ruled that no inquiry was necessary because one black juror remained on the prospective panel[3] and no "systematic" "pattern of exclusion of blacks" had been demonstrated.[4] As those *515 and other subsequent cases have held, however, neither of these reasons relieved the court of its duty to conduct the appropriate inquiry.
After initially expressing doubt as to whether Neil applied to civil suits,[5] the trial judge supported the conclusion that no Neil inquiry was warranted with the fact that no single defendant had "systematically" struck the four prospective black jurors to produce a pattern of exclusion. However, in Thompson v. State, 548 So.2d at 202, we specifically found error in a trial court's reliance upon a lack of "systematic" exclusion of blacks in rejecting a Neil challenge. We noted that this was the precise standard found in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled, Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), rejected by our decision in Neil, emphasizing, even before Batson did, that Florida law did not require the improper use of peremptory challenges to be "systematic" in order to establish a prima facie case of racial discrimination. Thompson, 548 So.2d at 202 n. 4.
Moreover, to the extent the defendants suggest that a single individual strike that is racially motivated is permissible, they are in error. Even where just one prospective black juror is struck for racially motivated reasons, a Neil violation has occurred. Reynolds, 576 So.2d at 1301; Slappy, 522 So.2d at 21.
We also reject the contention that the collective effect of the defendants' individual uses of peremptory challenges was insufficient to produce a pattern of exclusion. Whether a pattern emerges from a single litigant's use of peremptory challenges or, as in this case, from the sum of the individual strikes by multiparty litigants, the effect is the same.
Nor does the fact that a member of the excluded racial minority served as a juror or alternate dispose of a party's Neil claim. As we have previously explained:
[The] number [of challenged peremptories] alone is not dispositive, nor even the fact that a member of the minority in question has been seated as a juror or alternate. Indeed, the issue is not whether several jurors have been excused because of their race, but whether any juror has been so excused, independent of any other.
Slappy, 522 So.2d at 21 (citations omitted); Thompson, 548 So.2d at 202. In the absence of any indication on this record that the excluded black jurors would have been unfair, biased against a party, or otherwise unfit to be a juror, we conclude that the Halls met their burden of establishing a prima facie case of discrimination and that the trial court abused its discretion in refusing to inquire into the defendants' reasons for excluding the challenged jurors. See Bryant v. State, 565 So.2d 1298 (Fla. 1990) (requiring inquiry where five of first seven peremptory excusals were against prospective black jurors). Aside from the above reasons found to be invalid, the trial court offered nothing to rebut the strong inference of discriminatory motive created by the exclusion of four out of five prospective black jurors.
The defendants now attempt to cure the problem by suggesting race-neutral reasons for their strikes. As we have noted in the past, however, the appellate court is not a forum for conducting an after-the-fact Neil inquiry. Such endeavors are fraught with speculation and seldom reflect the true thought processes that *516 occurred at the time of the challenge. The proper time for exacting race-neutral reasons is during voir dire, and the proper forum is the trial court, not the appellate court. Stokes v. State, 548 So.2d 188, 196 (Fla. 1989); see Bryant v. State, 565 So.2d at 1301. This case aptly illustrates the difficulty in attempting such an exercise on appeal. The district court below attempted to rationalize the decision of the trial judge by noting that in this medical malpractice action, three of the excused jurors had ties to the medical community. However, the record reflects that several of the white jurors who were seated on the jury also had ties to the medical community. Thus, without a more detailed explanation of the exact nature of the defendants' objections to the challenged jurors, the mere fact that these jurors had ties to the medical community would appear to be a pretext. See Slappy, 522 So.2d at 22.
It requires only a minute or two for a party to indicate valid, nondiscriminatory reasons for excluding a potential juror. Once articulated, the trial court is in the best position to evaluate the neutrality of the proffered reasons, and its conclusion in this regard will be accorded deference on appeal. Reed v. State, 560 So.2d at 206. However, where no inquiry is conducted, "[d]eference cannot be shown to a conclusion that was never made." Reynolds, 576 So.2d at 1302.
Accordingly, we quash the decision below and remand this case for a new trial.[6]
It is so ordered.
SHAW, C.J., and GRIMES, KOGAN and HARDING, JJ., concur.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
McDONALD, Justice, dissenting.
I would approve the decision under review. The record does not support the claim that the trial judge abused his discretion in declining to hold a Neil inquiry. The majority opinion simply second guesses the trial judge on this issue and declines to afford him the deference to which he is entitled.
In effect, this decision requires a party seeking to exercise a peremptory challenge to a member of a special class to always explain the reason for the challenge. The trial judge evaluates the explanation and must state his conclusions and reasons therefor on the record. On review, if we disagree with the trial judge that an inquiry was required or that the reason was race neutral, we will reverse and require a new trial. It appears that in doing so we have completely retreated from the abuse of discretion concept when it comes to jury selection issues.
OVERTON, J., concurs.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution.
[2] State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986).
[3] Three times during the course of the discussion the trial judge emphasized that there was still a black juror on the jury.
[4] In response to the plaintiff's objection, the court replied:

Mr. Rosenblatt, I don't put myself in the place of the attorneys when they decide who they want on a jury. His challenges have been black people. On the face of it, it would appear maybe there is a reason. Do you wish for me to inquire as to the reason for the strikes?
There's no reason for me to inquire as to the reasons of the strikes. His strategy may be all wet. That's his strategy. As long as he hasn't demonstrated to me a pattern of exclusion of blacks in this case or other case[s], couldn't be other cases because he hasn't been in front of me. I find he has not been doing that.
[5] In the third district, Neil was extended to civil cases in City of Miami v. Cornett, 463 So.2d 399 (Fla. 3d DCA), dismissed, 469 So.2d 748 (Fla. 1985). Since then, the United States Supreme Court has settled the issue by holding that civil litigants may not use peremptory challenges in a racially discriminatory manner. Edmonson v. Leesville Concrete Co., ___ U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).
[6] We decline to address the other issues raised by the parties.