PER CURIAM.
 

 Lawanda Sparks appeals a jury verdict in defendant’s favor in her personal injury action against Allstate Construction, Inc. Finding that the trial court abused its discretion in allowing the defense’s use of peremptory challenges to exclude African-Americans from the jury in a systematic fashion, we reverse.
 

 Sparks slipped and fell on a sidewalk by her work at the Juvenile Justice Department. Allstate was performing construction workplace on the premises. Allstate had blocked off an area of the sidewalk to safeguard pedestrians from construction debris. Sparks sued Allstate for negligence and for creating a dangerous condition.
 

 During jury selection the following took place:
 

 MR. SANDLER: Okay. Defense strikes number 4.
 

 MR. LIPPINCOTT: Judge, we would ask for a reason. It seems he is using his peremptory challenges in a racially discriminatory manner. My client is black and Mr. Ford is black.
 

 THE COURT: What is the basis?
 

 MR. SANDLER: Judge, he is a bus driver and must have complaints constantly from people—
 

 THE COURT: I can’t hear you.
 

 MR. SANDLER: He is a bus driver and must have complaints constantly from people. He said in answer to one of the questions that it is something like a circus or something each day and all kinds of crazy things going on.
 

 THE COURT: Okay. I don’t think it is racial. I’m not finding that it is racial. Anyway, we are looking at jurors 1, 2, 5, 6, 8, and 9. Unless there’s an objection, that’s your jury.
 

 MR. SANDLER: Is it their turn?
 

 THE COURT: I don’t care. Plaintiff, your turn.
 

 MR. LIPPINCOTT: If the panel is 1, 2, 5, 6, 8, and 9, we are fíne with that.
 

 THE COURT: 1, 2, 5, 6, 8, and 9.
 

 
 *163
 
 MR. SANDLER: Judge, may I have a moment, Judge? Judge I’ll strike number 5, Judge.
 

 MR: LIPPINCOTT: Judge, again, it appears that counsel is using his peremptory challenges in a racially discriminatory manner. I would ask for a reason.
 

 THE COURT: Why did you exercise number 5?
 

 MR. SANDLER: Judge, her brother is a police officer at—
 

 THE COURT: Speak up.
 

 MR. SANDLER: Her brother is a police officer. This incident occurred at the Department of Juvenile Justice—
 

 THE COURT: That was the criminal justice? I can’t hear you.
 

 MR. SANDLER: Sorry, Judge. Ms. Cuevas’ brother is a police officer. This accident occurred at the Department of Juvenile Justice. One of the defenses in terms of factual defenses is that the spot where this happened was the responsibility of the Department of Juvenile Justice.
 

 THE COURT: Okay, That’s good enough. We are looking at jurors 1, 2, 6, 8, 9 and 10. Any objection?
 

 [[Image here]]
 

 MR. SANDLER: Judge, I would strike number 11.
 

 THE COURT: Why?
 

 MR. SANDLER: Judge, she is a former police officer and again, there is a strong tie between being a police officer — ■
 

 THE COURT: Okay. All right.
 

 MR. LIPPINCOTT: Counsel is anticipating my Neil versus State objection.
 

 THE COURT: He doesn’t want police officers. I guess that is okay. The jury is 1, 2, 6, 8, 9 and 12. That’s what you got.
 

 After this exchange, the selection of an alternate juror began. The defense again sought to exercise a peremptory challenge on an African American juror.
 

 MR. SANDLER: On the alternate, we strike 14. Judge, on the alternate I strike 14.
 

 THE COURT: Why?
 

 MR. SANDLER: Again, he’s a bus operator, and along the same lines that I previously discussed.
 

 THE COURT: Let me ask you this: Rather than pick an alternate, would you rather go with five in the event one doesn’t come back this afternoon or tomorrow if it goes that far? Would you rather do it that way?
 

 MR. LIPPINCOTT: We can do that, Judge. I have seen a pattern. Counsel, Defense Counsel has stricken four people. All of those are black.
 

 With this, jury selection concluded. The court announced the jurors and then immediately, one transcript page later, swore in the jury. Everyone was excused to go to lunch. Upon returning from lunch plaintiffs counsel revisited the defense’s discriminatory use of peremptories.
 

 MR. LIPPINCOTT: I would like to renew our objection under State versus Neil or Neil versus State with regard to the fact, the obvious glaring fact, that the Defense counsel has sought to strike four witnesses, all of whom are African Americans, black folks, without race neutral reasons in our view.
 

 THE COURT: I looked at the complexion of the jury. There is one African American woman on the jury that was not stricken.
 

 MR. LIPPINCOTT: Correct. But all of those strikes he did use were against African American folks for reasons we believe are not race neutral. That being the two bus drivers.
 

 
 *164
 
 THE COURT: I’m not going to revisit that ruling. In light of that, do you want to proceed, take a voluntary dismissal or whatever?
 

 MR. LIPPINCOTT: No. We don’t want to take voluntary dismissal. We just wanted to preserve the record....
 

 R5:104-05.
 

 This transcript demonstrates a systematic use of peremptories, followed by what seem to be quickly-contrived excuses for the strikes, in a manner calculated to exclude African Americans from serving on the jury. The only African American who was seated came up
 
 after
 
 the defense’s peremptories had been exhausted.
 

 It is axiomatic that “jurors and litigants have a right to jury selection procedures that are free from discrimination.”
 
 Murray v. State,
 
 3 So.3d 1108 (Fla.2009). Here, plaintiffs counsel followed all the criteria in
 
 Melbourne v. State,
 
 679 So.2d 759, 764 (Fla.1996): a timely objection on an appropriate basis; showing that the venire member is a member of a distinct racial group; requesting the court to ask a reason for the strike. In this case, using “reason and common sense,”
 
 Melbourne,
 
 679 So.2d at 765, the circumstances surrounding, and explanation for, the strikes seem palpably pretextual.
 
 Rodriguez v. State,
 
 753 So.2d 29, 40 (Fla.2000).
 

 This is particularly true when
 
 all
 
 of the peremptory strikes are used against one distinct racial group, and a single member of that same group is only seated at a time when that party has exhausted its entire allowance of peremptories.
 

 In
 
 Hall v. Daee,
 
 602 So.2d 512, 514 (Fla.1992), the Supreme Court of Florida noted that the growing collection of cases on racially discriminatory strikes in jury selection “cannot be read to suggest that judges should ignore the logical implication created by the exclusion of four out of five prospective black jurors in assessing the likelihood of discrimination in the exercise of a party’s peremptory challenges.”
 
 [1]
 

 The defense argues that this issue is not preserved for review. It asserts that plaintiff did not renew the objection before the jury was sworn, but rather waited until after lunch, before further proceedings began. We are not persuaded by this argument. In this case, unlike
 
 Joiner v. State,
 
 618 So.2d 174 (Fla.1993), there was no affirmative acceptance of the jury. There was nothing that would lead to the assumption that plaintiff had abandoned her objections.
 
 Crawford v. State,
 
 805 So.2d 997 (Fla. 2d DCA 2001). Here, “because of the specific objection communicated to the judge and the proximity of this objection to the swearing of the jury, there is no question that the judge understood and rejected [plaintiffs] consistently maintained position that the judge had erred. It would have been futile for the lawyer to repeat what he had just told the judge.”
 
 Gootee v. Clevinger,
 
 778 So.2d 1005, 1009 (Fla. 5th DCA 2000). This record establishes that one additional and cumulative objection “would have been an obviously futile gesture.”
 
 Webb v. Priest,
 
 413 So.2d 43, 46 (Fla. 3d DCA 1982). This issue was sufficiently presented to the trial court for it to be fully considered, and the record is adequate to allow full appellate review.
 

 This disposition makes it unnecessary to reach the remaining point raised on appeal.
 

 
 *165
 
 Reversed and remanded for further proceedings, including a new trial.
 

 [1]
 

 . We recognize that
 
 Melbourne
 
 and other cases following
 
 Hall
 
 established a procedure for each challenge, but the cumulative effect or "ratio of exclusion" in a case such as this warrants increasingly careful attention by a trial judge as the series of strikes begins to seem systematic.