# Third District Court of Appeal
## State of Florida

Opinion filed November 23, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D20-1527, 3D20-1821
Lower Tribunal Nos. F16-21911A, F16-21911B

_____

**Devin Travon Mays, and Leanthony Smith,**
Appellants,

vs.

**The State of Florida,**
Appellee.


Appeals from the Circuit Court for Miami-Dade County, Dava J. Tunis, Judge.

Ross Amsel Raben Nascimento, PLLC, and Robert G. Amsel, for appellant Devin Travon Mays; and Carlos J. Martinez, Public Defender and James A. Odell and Nicholas A. Lynch, Assistant Public Defenders, for appellant Leanthony Smith.

Ashley Moody, Attorney General and Richard L. Polin, David Llanes and Katryna Santa Cruz, Assistant Attorneys General, for appellee.


Before LOGUE, HENDON and BOKOR, JJ.

HENDON, J.

In these consolidated appeals, Devin Travon Mays ("Mays") and Leanthony Smith ("Smith") (collectively, "co-defendants"), appeal from final judgments of conviction and sentences. We reverse and remand for a new trial.

Facts

Mays and Smith were each charged with one count of attempted premeditated murder with a deadly weapon, a life felony. They pleaded not guilty and, following the court's denial of motions to suppress out-of-court identifications, both defendants were tried jointly and each retained separate counsel.

During voir dire, Mays' defense counsel asked the venire if any of the potential jurors really wanted to be on the jury. Juror Shuler, a Black woman, raised her hand and expressed her desire to serve on the jury. The following conversation between defense counsel and Ms. Shuler took place:

MR. AMSEL [Defense]: Does anybody here really want to be on the Jury? Okay. Could you tell us your name again?

MS. SHULER: Shuler, Lavonda Shuler.

MR. AMSEL: Okay. Tell us why you want to be on this jury.

MS. SHULER: The reason why is because I'm looking around, out of 39, I would say, there is only about four Blacks.

2

MR. AMSEL: Four Blacks.

MS. SHULER: So, I would be terrified if I was them if I had 12 people that don't look like me. If you understand.

MR. AMSEL: I understand what you're saying perfectly.

Later, the State moved to strike Juror Shuler for cause. When asked to place its reason on the record, the State answered that it appeared Ms. Shuler had a motive to be on the jury, explaining:

MS. LEWIS: At 11:25 this morning when Defense, Mr. Amsel, was questioning her, she said I'd be terrified if I had 12 people that don't look like me. I want to be on this jury for that reason. It just seem [sic] like she came here with like a motive and agenda to be on the jury. She said the defendants should be terrified.

The defense responded:

MR. BOWMAN: Your Honor, she was the young lady who was shy. When questioned, I mean, really she spoke about the defendants' right to be tried by a jury of his [their] peers. Indicating that she wanted to be on the jury is not for cause challenge. It's her right. She wasn't -- she didn't volunteer to come to the jury. She was subpoenaed like anybody else. And all she stated was that she would like to be on a jury and that the defendant[s], who's [who are] African American, Mr. Smith and Mr. Mays are African American, deserved or she felt that, you know, as a person of color, they should have a representative on the jury, or at least an opportunity to stay on the panel and be picked.

. . . .

MR. AMSEL: And, Your Honor, if I may add, she did not say and I'm bias[ed] one way or the other. Simply talked about someone having a jury of their peers.

3

The trial court denied the State's motion to strike Juror Shuler for cause. The State then sought to peremptorily strike Juror Shuler. At that point, Mays' defense asked the State to provide a race-neutral reason for the peremptory strike. The State responded that one Black male had been selected for the jury panel, and repeated that its reason for striking Juror Shuler was her statement about being terrified if she had a jury that did not look like her. The trial court concluded that the State's reason was race-neutral and genuine.

In response to the court's conclusion, the following conversation with the court took place, in pertinent part:

> **MR. NASCIMENTO: Our position, that is not a facially race neutral reason. Her response was inspired by race. And the State's understanding of her response is completely based on race. Her identifying the defendants as African American and her stating that she wanted to be on the jury because of their race and of her race is the exact opposite of a race neutral reason. So, I think that they don't satisfy that first prong. Secondary, I don't think it's a genuine race neutral.**
>
> **. . . .**
>
> **MR. NASCIMENTO: So, I don't think the Court has to go to the genuineness of it. It's facially not race neutral. It's for no other reason, but for the color of her skin and the color of the defendants' skin.**
>
> THE COURT: Here's -- the question that was asked. Her explanation was that the defendant's [sic] -- essentially what she was saying is that - - well, first of all, we have another African American right now on this jury. And the, you know, the Court's already noted that, even though the Defense has said people

4

have been taken off, those were yesterday stipulated cause challenges. Having said that –

. . . .

THE COURT: Okay. So, where we're at right now, and everyone has put their positions on the record, is that the State has indicated to the Court -- this is what I understand. The State has -- the Court denied the cause challenge. So, the issue before the Court is the State's exercise of the peremptory challenge. The Defense has objected to that. I asked for race neutral reasons.

. . . .

Then today when Mr. Amsel got up, he said who here wants to be on the jury and she raised her hand. She was the only person that I saw that raised her hand. And she said, I'm looking at the defendants and I'm looking at this group of potential, you know, jurors. I think she even said there is [sic] 49. I don't know if she said -- I remember a nine, maybe 49. I don't know if she said. And she said there is [sic] only four Blacks here, other than me. And then I wrote down, quote, I would be terrified if people didn't look like me, close quote.

. . . .

First of all, are they race neutral. And then thereafter, are they genuine or pretextual. So, the Court is going to find that they are race neutral.

. . .

**Okay. Secondly, the Court is going to find that -- I understand that her statement was a statement pointing to an issue regarding race, the race of the defendants, vis-a-vis, or in connection with the makeup of the potential jury. But the Court is analyzing this to mean the following: She's a Black woman that made that statement. If she were a White woman that made that statement, the statement would nonetheless mean that she would be sympathetic to the defendants, irrespective of her own personal race, whether she was of Japanese heritage, Irish heritage, Hispanic heritage, you know, Russian, I mean, any kind of -- anything you want, you know, whatever we want to call it. It would still**

5

**be a comment about a sympathetic look towards the defendant[s] that would not go to the color of skin, but rather the content of her answer. It's all about what she is saying. Not what she what she herself is. And that's the second one. And the Court finds that, you know, that's a race neutral statement that anyone -- that she could make that if she were, say, a white woman.** I mean, if the roles were reversed and I was the one making it, I'd feel sympathetic towards that because the jury is not made up of these people. I can still be a person and a human being making that statement or someone else can.

. . . .

So, having said that, the Court is going to find that each one of those answers individually I need to evaluate the explanation individually. **And even if the Court is wrong about my evaluation on her comment as it relates to her statement that she's sympathetic towards the defendants because she would be terrified if the jury didn't look like her. Okay. If I am wrong about my analysis that that is not an issue about the color of her skin, but rather the content of her answer and sympathy towards the defendants. That is a race neutral reason for a party, in this case, the State, to cite to strike a juror.**

(Emphasis added). The trial court allowed the State's peremptory against Ms. Shuler.[1] The jury returned a verdict finding the co-defendants guilty as charged, and the court denied motions for new trial. The trial court adjudicated Mays guilty and sentenced him to a twenty-five year prison sentence followed by five years of probation. Smith was sentenced to forty

---

[1] The record on appeal discloses that defense counsel noted for the record that the State sought to strike every Black person on the venire. Only one Black person served on the co-defendants' jury after the trial court granted the State's motion to strike Juror Shuler.

6

years in prison with a twenty-five year minimum mandatory for discharging a firearm, followed by ten years of probation. The co-defendants appeal.

Our opinion concerns only one of the issues raised by the co-defendants on appeal, that of the peremptory strike of Juror Shuler. The appropriate standard to determine the likelihood that a peremptory challenge was used discriminatorily is abuse of discretion. King v. State, 89 So. 3d 209, 229 (Fla. 2012) (citing Melbourne v. State, 679 So. 2d 759, 764 (Fla.1996)). A trial court's decision to allow a peremptory strike of a juror is based primarily on an assessment of credibility. Id. As a reviewing court, this Court must "acknowledge that peremptory challenges are presumed to be exercised in a nondiscriminatory manner." Poole v. State, 151 So. 3d 402, 409 (Fla. 2014) (citing Nowell v. State, 998 So. 2d 597, 602 (Fla. 2008)).

Discussion

In State v. Slappy, 522 So. 2d 18 (Fla.1988), the Florida Supreme Court provided the following non-exhaustive list of factors which may tend to show that the proffered reason for a challenge is pretextual:

> (1) alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a challenge based on reasons equally applicable to juror [sic] who were not challenged.

7

Id. at 22. Following Slappy, in Melbourne v. State, 679 So. 2d 759 (Fla.1996), the Florida Supreme Court described the three-step procedure to be followed when peremptory strikes are challenged as discriminatory. First, the party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. Id. at 764. Next, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation. Id. Finally, the trial judge must determine whether or not the explanation proffered by the proponent of a peremptory strike is race-neutral and genuine. Id. In making this determination, the trial judge is not bound to accept the reasons proffered by the proponent at face value. Slappy, 522 So. 2d at 22. The court must examine "all the circumstances surrounding the strike" to satisfy itself that the strike is not a pretext. Melbourne, 679 So. 2d at 764; Landis v. State, 143 So. 3d 974, 978 (Fla. 4th DCA 2014). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the peremptory strike, the explanation is not a pretext, the court will sustain the strike.

Our concern in this case is the court's consideration of the genuineness of the State's reasons for the peremptory strike. In its

8

genuineness determination, the trial court must "satisfy itself that the explanation is not a pretext." Davis v. State, 691 So. 2d 1180, 1183 (Fla. 3d DCA 1997). The factors relevant to the trial court's genuineness inquiry include the "racial make-up of the venire, prior strikes exercised against the same . . . racial group, or singling out the juror for special treatment." Norona v. State, 137 So. 3d 1096, 1097-98 (Fla. 3d DCA 2014) (quoting Wynn v. State, 99 So. 3d 986, 989 (Fla. 3d DCA 2012)).

In this case, the trial court erroneously focused on Juror Shuler's comments instead of examining the surrounding circumstances of the State's proffered explanation in support of granting its peremptory strike. The State's proffered reason for the strike was that Juror Shuler came to the jury with "a motive and agenda to be on the jury," implying that she would favor the defense. The defense rebutted the State's contention with the fact that all the jurors in the venire are randomly called to jury service, and one cannot design one's own selection as a juror in order to somehow favor one party or another. Further, Juror Shuler's explanation, that if she were on trial she would feel "terrified" to see a majority white jury rather than a fair representation of the community, was a reasonable response to defense counsel's question. See Batson v. Kentucky, 476 U.S. 79, 97 (1986) ("[A] prosecutor may not rebut the defendant's prima facie case of discrimination

9

by stating merely that he challenged jurors of the defendant's race on the assumption - or his intuitive judgment - that they would be partial to the defendant because of their shared race."). The State countered with the weak explanation that there was already one Black person on the jury, as if this entirely cured the inequity.

In its explanation for granting the State's peremptory strike, the trial court failed to take into consideration "all the circumstances surrounding the strike" to satisfy itself that the strike is not a pretext. Melbourne, 679 So. 2d at 764. In this case, the record circumstances include the State's clear pattern of exclusion of Black jurors, in which the State sought to strike every Black person on the venire. The trial court, in analyzing the genuineness of the State's explanation, failed to consider that the jury composition was skewed. It was apparent that there were not enough Black persons remaining in the venire to be chosen, which is exactly why Juror Shuler raised her hand when asked who really wanted to serve on the jury. See Brannon v. State, 320 So. 3d 898, 903 (Fla. 3d DCA 2021) ("While this Court has made it clear that Melbourne does not require a trial court to expressly articulate its thought process in making a genuineness determination, our case law does require the record to support the trial court's genuineness determination.").

As explained by the Fourth District Court of Appeal in <u>Landis</u>, 143 So. 3d at 978,

> "After a trial court determines that the proponent has proffered a race, ethnicity, or gender-neutral reason for the strike and then proceeds to evaluate that reason's genuineness, the proper procedure requires the trial court to make an inquiry of the opponent of the strike. At that point, the opponent bears the burden of persuasion, to demonstrate why the reason was not genuine. The trial court should also request that the opponent advise how, given all the circumstances, the explanation is a pretext for discrimination. Where "no inquiry is conducted, '[d]eference cannot be shown to a conclusion that was never made.'" <u>Hall v. Daee</u>, 602 So. 2d 512, 516 (Fla. 1992) (quoting <u>Reynolds v. State</u>, 576 So. 2d 1300, 1302 (Fla. 1991)).

The trial court did not seek to question Juror Shuler further, or give defense counsel the opportunity to advise the court how the State's explanation was a pretext for discrimination. Further, if the State was truly concerned that Juror Shuler's comments demonstrated bias in favor of the co-defendants, it could have and should have delved further into her motivations for her comments, which were perfectly clear on their face; hers was an explicitly race-based concern. We find that Juror Shuler's answers reflected her desire to participate on a jury that incorporated a fair representation of the co-defendants' community. <u>See</u> <u>Murray v. State</u>, 3 So. 3d 1108 (Fla. 2009) (stating that jurors and litigants have a right to jury selection procedures that are free from discrimination). As stated in <u>Slappy</u>, 522 So. 2d at 20, "[t]he need to protect against bias is particularly pressing in the selection of a jury

11

. . . because the parties before the court are entitled to be judged by a fair cross section of the community. . . . " The State's subsequent explanation for its peremptory challenge was effectively rebutted by the defense's answer and is suspect under Slappy. Id. at 23. Based on the circumstances surrounding the strike, we conclude that the trial court's conclusion as to the genuineness of the State's explanation, and the subsequent grant of the State's peremptory strike, was erroneous.[2]

In Spencer v. State, 615 So. 2d 688, 690 (Fla. 1993), the Florida Supreme Court cautioned against trial judges making arbitrary evaluations and excusal of jurors, especially when the juror is Black, and the jury composition is overwhelmingly not Black. The Florida Supreme Court has instructed,

> We recognize the great responsibility and discretion this issue reposes in trial judges and caution both judges and litigants against the dangers observed by Justice Marshall in his concurring opinion in Batson:
>
> > Nor is outright prevarication . . . the only danger here. "[I]t is even possible that an attorney may lie to himself

---

[2] A trial court may consider logical implications in evaluating the likelihood of racial discrimination where a pattern exists. Compare Sparks v. Allstate Const., Inc., 16 So. 3d 161, 164 (Fla. 3d DCA 2009) (finding a trial court's finding of pretext premised on a pattern will survive review under an abuse of discretion standard where the "transcript demonstrates a systematic use of [peremptory challenges], followed by what seem to be quickly-contrived excuses for the strikes, in a manner calculated to exclude African Americans from serving on the jury.").

in an effort to convince himself that his motives are legal." . . . A prosecutor's own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is "sullen," or "distant," a characterization that would not have come to his mind if a white juror had acted identically. A judge's own conscious or unconscious racism may lead him to accept such an explanation as well supported.

 . . .

[P]rosecutors' peremptories are based on their "seat-of-the-pants instincts." . . . Yet "seat-of-the-pants instincts" may often be just another term for racial prejudice. Even if all parties approach the Court's mandate with the best of conscious intentions, that mandate requires them to confront and overcome their own racism on all levels.

Slappy, 522 So. 2d at 23 (citing to Batson, 476 U.S. at 106).

Based on the record pattern of exclusion of Black jurors, and the State's thin rationale for its peremptory strike, we find the trial court's grant of the State's peremptory strike of Juror Schuler was an abuse of discretion. We reverse and remand for a new trial. Because we reverse the co-defendants' convictions and sentences and remand for a new trial, we do not reach the remaining issues on appeal.

Reversed and remanded.